**Judith WILLIAMS, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, et al., Defendants.**

**No. 5:97 CV 0594.**

United States District Court, N.D. Ohio.

May 9, 1997.

---

A. Russell Smith, Laybourne, Smith, Gore & Goldsmith, Akron, OH, Lawrence J. Scanlon, Scanlon & Henretta, Akron, OH, for Judith Williams.

Robert C. Weber, Dennis L. Murphy, Roger Allen Hipp, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Company.

David J. Hooker, Thomas J. Collin, Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, for Council for Tobacco Research–U.S.A., Inc.

Kim M. Hastings, Charna E. Sherman, David J. Michalski, James M. Drozdowski, Hahn, Loeser & Parks, Cleveland, OH, for Tobacco Institute, Inc.

Diane P. Chapman, Thomas H. Shunk, Baker & Hostetler, Clvevland, OH, Thomas J. Frederick, Dan K. Webb, Thomas R. Bearrows, Joseph J. Zaknonen, Winston & Strawn, Chicago, IL, for Philip Morris, Inc.

David S. Cupps, J. Scott Jamieson, Vorys, Sater, Seymour & Pease, Columbus, OH, Thomas E. Riley, Chadbourne & Parke, New York City, for American Tobacco Company.

## MEMORANDUM OPINION AND ORDER

DOWD, Senior District Judge.

Defendant, The Tobacco Institute, Inc. ("TI"), has filed, pursuant to Fed.R.Civ.P. 12(b)(2), a motion to dismiss the above-captioned complaint against it for lack of personal jurisdiction. Plaintiff has opposed the motion and, in the alternative, has requested that resolution of the motion be delayed until after Plaintiff has the opportunity to conduct limited discovery on the question of personal jurisdiction. For the reasons discussed below, the Court shall defer ruling on Defendant TI's motion.

## DISCUSSION

TI raises two arguments in support of its motion: (1) that Plaintiff cannot establish either general or specific personal jurisdiction over TI; and (2) that TI's lobbying activities in the State of Ohio do not support personal jurisdiction over TI.

A defendant's challenge to personal jurisdiction requires a federal court sitting in diversity to apply a two-step analysis. First, the defendant must be amenable to suit under the forum state's long-arm statute. Second, the exercise of personal jurisdiction over the defendant must not violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Omni Capital Intern. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409–410, 98 L.Ed.2d 415 (1987); *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir. 1972).

The Ohio long-arm statute provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

\*　\*　\*　\*　\*　\*

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

\*　\*　\*　\*　\*　\*

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state [.]

\*　\*　\*　\*　\*　\*

Ohio Rev.Code § 2307.382(A). This statute is intended to extend the jurisdiction of Ohio courts to the maximum extent permissible by the Due Process Clause. *In–Flight Devices*, 466 F.2d at 224–225.

[D]ue Process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90

L.Ed. 95 (1945) (citations omitted). The Sixth Circuit has established three criteria for determining personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968).

General personal jurisdiction permits a court to exercise power over a non-resident defendant without regard to the subject of the claim asserted, provided the defendant's activities in the forum state can fairly be characterized as "continuous and systematic." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). Specific personal jurisdiction gives a court power over a non-resident defendant only with respect to claims arising out of the particular activities of the defendant in the forum state. *See, e.g., Burger King Corp., v. Rudzewicz,* 471 U.S. 462, 473, 105 S.Ct. 2174, 2182–2183, 85 L.Ed.2d 528 (1985).

TI argues that Plaintiff can establish neither general nor specific jurisdiction. It bases this argument essentially on an assertion that it has "no current contacts in Ohio" except for "intermittent lobbying activity." (Motion at 5). TI is of the view that this is insufficient to establish the requisite nexus to the forum state. TI relies on *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44 (2d Cir. 1991). However, relying on the same case, the Court concludes that Plaintiff is entitled to at least limited discovery to establish the precise nature and extent of TI's contacts in Ohio.

In *Klinghoffer,* defendant/appellant Palestine Liberation Organization ("PLO") challenged the district court's conclusion that it had sufficient contacts in the State of New York to be sued in various actions brought against it in connection with the October 1985 seizure of the Italian passenger liner Achille Lauro and the killing of one of the passengers. The district court analyzed the PLO's activities in New York under Section 301 of New York Civil Practice Law and Rules which provided for general jurisdiction over corporations that were "doing business" in New York. The PLO argued that its only contact with New York was by way of its "permanent observer" status at the United Nations ("UN"). To carry out this purpose, the PLO admitted having a building in Manhattan (which it used as an office and a residence for its employees), an automobile, a bank account and a telephone listing. PLO representatives engaged in speaking tours and fund-raising activities throughout the State. The district court concluded that this was enough to constitute "doing business" in the State. On appeal, the Second Circuit reversed stating that the district court had "fail[ed] to distinguish those activities the PLO conduct[ed] as an observer at the UN from those activities it conduct[ed] for other purposes." *Klinghoffer,* 937 F.2d at 51. Only the latter activities could "properly be considered as a basis of jurisdiction." *Id.*[1]

The Court of Appeals reached this conclusion for two reasons, the second of which is applicable in the instant case, namely, that "basing jurisdiction on the PLO's participation in UN-related activities would put an undue burden on the ability of foreign organizations to participate in the UN's affairs." *Klinghoffer,* 937 F.2d at 51. The court drew an analogy to "government contacts" situations where other courts have held "that jurisdiction in the District of Columbia may not be grounded on a non-resident's getting information from or giving information to the government, or getting the government's

1. The case was remanded for a determination of whether the PLO's non-UN-related contacts with New York provided a sufficient basis for jurisdiction at the time each of the several complaints was filed. On remand, the district court found that those activities did suffice to meet the "doing business" standard for the period prior to the passage of the Anti–Terrorism Act in 1988. After the passage of that Act, the PLO had apparently been forced to discontinue its non–UN–related activities and, therefore, in the time after the Act, there were insufficient activities to meet the standard. *Klinghoffer v. S.N.C. Achille Lauro,* 795 F.Supp. 112 (S.D.N.Y.1992).

permission to do something." *Id.* (internal quotation marks and citation omitted).

As noted above, TI argues that its only presence in Ohio is for "intermittent lobbying." Plaintiff, however, asserts, without any sworn support, that not only does TI have agents in Ohio to lobby and communicate with lawmakers, but also it promotes smoking through various forms of popular media and publishes brochures specifically targeting Ohio, both of which activities have served to misrepresent to the people of Ohio the real hazards of smoking. These activities, Plaintiff argues, are part of the conspiracy and misrepresentation alleged in the Complaint.

## CONCLUSION

In light of the *Klinghoffer* line of cases, the Court is of the view that, notwithstanding TI's argument that it would be no more than a "fishing expedition," Plaintiff should be allowed an opportunity to conduct very limited discovery, in the form of one deposition under Fed.R.Civ.P. 30(b)(6), to ascertain whether TI in fact conducts any non-lobbying activities in the State and, if so, whether such activities are sufficient to subject TI to the jurisdiction of the courts of this forum. Such deposition shall be completed by May 30, 1997, and shall not exceed three (3) hours in length. Thereafter, Plaintiff may supplement her response to the motion to dismiss by June 16, 1997 and Defendant TI may supplement its reply by June 23, 1997.

The Court also notes that a Case Management Conference has been scheduled for this case and a companion case, *Dale Jones, et al. v. R.J. Reynolds Tobacco Company, et al.,* Case No. 5:97CV0593, for June 5, 1997 at 12:00 Noon. *See* Order of April 3, 1997, note 1 (Docket No. 9). Although TI's motion to dismiss will not be resolved for several weeks after that, TI shall still be required to attend the CMC so that, in the event TI's motion is denied, there will be no unnecessary delay in the proceedings.

If TI's motion is granted, the Court will consider a motion from TI for costs associated with the unnecessary attendance at the CMC and the Rule 30(b) deposition *unless* Plaintiff voluntarily dismisses TI from this action prior to May 30, 1997, thereby rendering the entire issue moot.

IT IS SO ORDERED.