**Joann HOLLAR, Individually and as Fiduciary of the Estate of David Hollar, Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED, et al., Defendants.**

No. 1:97 CV 00667.

United States District Court, N.D. Ohio, Eastern Division.

July 7, 1998.

Mark R. Chilson, Dayton, OH, pro se.

Walter L. Cofer, shook, Hardy & Bacon, Kansas City, pro se.

Tammy B. Coker, Shook, Hardy & Bacon, Kansas City, MO, pro se.

Thomas J. Collin, Thompson, Hines & Flory, Cleveland, OH, pro se.

Mark A. Dover, Shook, Hardy & Bacon, Kansas City, MO, for defendant represented by Dover.

John R. Fraser, Shook, Hardy & Bacon, Kansas City, pro se.

Craig E. Gustafson, Shook, Hardy & Bacon, Kansas City, pro se.

Henry J. Hilow, Cleveland, OH, pro se.

David J. Hooker, Thompson, Hine & Flory, Cleveland, OH, pro se.

Steven Klugman, Debevoise & Plimpton, New York City, pro se.

Ronald S. Kopp, Roetzel & Andress, Akron, OH, pro se.

Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, pro se.

John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, pro se.

Patrick M. McLaughlin, McLaughlin & McCaffrey, Cleveland, OH, pro se.

R. Bryan Nace, Laybourne, Smith, Gore & Goldsmith, Akron, OH, pro se.

Matthew Charles O'Connell, Reminger & Reminger, Cleveland, OH, pro se.

John J. Repcheck, Sharlock, Repcheck & Mahler, Pittsburgh, PA, pro se.

Thomas D. Schroeder, Womble, Carlyle, Sandridge & Rice, Winston–Salem, NC, pro se.

A. Russell Smith, Laybourne, Smith, Gore & Goldsmith, Akron, OH, pro se.

Thomas A. Swihart, Fort Wayne, IN, pro se.

Richard A. Vadnal, Reminger & Reminger, Cleveland, OH, pro se.

Keith W. Vaughhan, Womble, Carlyle, Sandridge & Rice, Winton–Salem, NC, pro se.

James R. Vaughn, Roetzel & Andress, Akron, OH, pro se.

Robert Francis Ware, Jr., Thompson, Hine & Flory, Cleveland, OH, pro se.

Jerome F. Weiss, Cleveland, OH, pro se.

Harry Zirlin, Debevoise & Plimpton, New York City, pro se.

### MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court on the Motion of the Tobacco Defendants (Philip Morris, Inc., R.J. Reynolds Tobacco Company ("RJR"), The Tobacco Institute, Inc. ("TI") and Council for Tobacco Research USA, Inc. ("CTR")) to Dismiss the Amended Complaint (Document # 78) and the Motion of TI for reconsideration of its Motion to Dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). (Document # 44).[1] For the rea-

---

1. The Tobacco Defendants' first Motion to Dismiss the Complaint (Document # 53) has

sons stated below, the Motion of the Tobacco Defendants to Dismiss the Amended Complaint is granted in part and denied in part. TI's Motion for Reconsideration is denied.

### Factual and Procedural Background

This action was originally filed by Plaintiffs David and Joann Hollar in the Court of Common Pleas for Cuyahoga County. Defendants removed the case to this Court on March 13, 1997, pursuant to 28 U.S.C. § 1446(b) on the ground that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. The Complaint asserted claims of strict liability, negligent, wilful and wanton misconduct, fraud and misrepresentation, strict liability for misrepresentation, express warranty, implied warranty, and conspiracy and concerted action against the tobacco defendants[2] and claims of strict liability, negligence and wanton misconduct, express warranty, implied warranties, fraud and misrepresentation, and conspiracy and concerted action against the asbestos defendants—The Babcock & Wilcox Company, Union Boiler Company, Cleaver Brooks, Power Plant Services, Metropolitan Life Insurance Company and unidentified John Doe defendants.[3] Plaintiff David Hollar sought compensatory damages for lung cancer and asbestos related diseases and punitive damages. Plaintiff Joann Hollar sought damages for loss of services and consortium.

The Amended Complaint adds 12 paragraphs in the introductory section concerning nicotine and its addictive effects and adds 46 paragraphs, consisting mainly of statements or advertisements from the late fifties, sixties and early seventies, attributed to the tobacco defendants, to the fraud and misrepresentation claim. Plaintiff also added 8 paragraphs to the conspiracy and concerted action claim; primarily concerning the dissemination of information by TI and the formation of CTR (formerly TIRC).

Plaintiff David Hollar died prior to the filing of the Amended Complaint. Plaintiff Joann Hollar, acting as executrix of David Hollar's estate, brings the Amended Complaint as a wrongful death and survivorship action. Except for the added paragraphs, the causes of action against the Tobacco Defendants remain the same.[4]

Plaintiff alleges that during the period between 1971 and 1995, David Hollar smoked Marlboro cigarettes which were manufactured by Defendant Philip Morris and Winston cigarettes which were manufactured by RJR. (Amended Complaint ¶ 11). Joann Hollar smoked Winston and Marlboro cigarettes from 1968 to the present, and alleges that David Hollar would have breathed and been exposed to smoke from the cigarettes. (Amended Complaint ¶ 12).

been superceded by the motion currently before the Court. Accordingly, the first Motion to Dismiss is denied as moot.

2. As noted above, the tobacco defendants are RJR, which manufactures Winston cigarettes and Philip Morris which manufactures Marlboro cigarettes. The tobacco defendants also include two non-profit organizations—TI and CTR. Defendant TI is identified as a trade organization with its principal place of business in Washington, D.C. TI is alleged to have disseminated information on behalf of the tobacco manufacturers "concerning the absence of any deleterious effect of cigarette smoking to human health and the lack of any causal relationship between cigarette smoking and various diseases including addiction and cancer." (Amended Complaint ¶ 7). Defen-

dant CTR is identified as having been organized in 1954 by the tobacco industry, including Philip Morris and RJR, for the purpose of researching the allegations of "the ill effects of tobacco and cigarette smoking". (Amended Complaint ¶ 8).

3. The Asbestos Defendants have not moved to dismiss the Complaint or the Amended Complaint, thus the claims against the Asbestos Defendants will not be addressed.

4. Plaintiff filed a Stipulation of Dismissal of claims for product liability and express and implied warranty against Defendant CTR on March 10, 1998. The fraud and misrepresentation and conspiracy and concert of action claims remain against CTR.

The Tobacco Defendants contend that the Amended Complaint fails to state a claim upon which relief may be granted in that Plaintiff's claims are governed by the Ohio Product Liability Act, Ohio Rev.Code §§ 2307.71–2307.80, 2315.20, ("the Act") which precludes liability against manufacturers of products, like cigarettes, where the purported risks are a matter of common knowledge. Defendants also contend that Plaintiff's fraud and breach of warranty claims should be dismissed because they are vague and conclusory and do not satisfy the pleading requirements of Fed. R.Civ.P. 9(b) and 8(a). Moreover, if the fraud claim is dismissed, the conspiracy/concert of action claim should also be dismissed for lack of an underlying tort. Finally, RJR asserts that it was never properly served with the Summons and Complaint and thus, the action should be dismissed against it.

Plaintiff counters that her strict liability claims are not barred by the common knowledge defense because the tobacco industry mislead and confused the public with respect to the hazards of smoking and those deceptive efforts negated any reports of dangers and nullified any warnings. Further, Plaintiff contends that her warranty claims, specifically her implied warranty claim, was not eliminated by the Act and that her common law fraud claim was adequately pled and satisfies the particularity requirements of Fed.R.Civ.P. 9(b). Finally, Plaintiff contends that RJR received notice of this action through service on its parent, has not been prejudiced and should not be dismissed for any insufficiency in service of process. The issues have been exhaustively briefed by both sides and the Tobacco Defendants' Motion to Dismiss is now ready for decision.

TI filed a Motion to Dismiss pursuant to Rule 12(b)(2) on May 9, 1997, which was denied by marginal ruling on September 26, 1997. TI filed a Motion to Reconsider on October 15, 1997.[5] Plaintiff filed a Memorandum in Opposition to TI's Motion for Reconsideration and TI was granted leave to file supplemental authority in support of its Motion for Reconsideration. TI's Motion is now fully briefed and argued and ready for decision.

## Law and Analysis

### I. TI's 12(b)(2) Motion—Personal Jurisdiction

██ Federal courts apply the law of the forum state, subject to the limits of the Due Process Clause of the Fourteenth Amendment, to determine whether personal jurisdiction exists over a defendant. "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. International Amateur Athletic Fed'n.*, 23 F.3d 1110, 1115 (6th Cir.1994) citing *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972).

Under the procedural framework which governs Rule 12(b)(2) motions, the plaintiff bears the burden of establishing that jurisdiction exists. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261–62 (6th Cir.1996). In her Amended Complaint, Plaintiff alleges that TI is a tobacco industry trade organization with a principal place of business in Washington, D.C. (Amended Complaint ¶ 7). The Amended Complaint refers to numerous statements, advertisements and articles attributed to TI, mainly from the sixties, seventies and a couple from the early eighties; however, there is no indication that these statements were published or distributed in Ohio. (Amended Complaint ¶¶ 51–56) Plaintiff also avers that "TI has intentionally sought to influence people in Ohio and promote smoking and the tobacco industry ...." (Amended Complaint

---

5. TI has joined the Tobacco Defendants' Joint Motion to Dismiss the Amended Complaint with a reservation of its previously asserted position that the Courts lacks personal jurisdiction over TI.

¶ 100) "TI speaks for the tobacco industry, widely disseminating information in the media. TI's agents have appeared on national radio and television programs. These programs were broadcast across the nation including to citizens in Ohio.... [TI's] publications were sent to news organizations and others. TI sent information to editorial writers questioning the link between smoking and disease. TI's agents also spoke to civic groups and trade organizations." (Amended Complaint ¶ 101). Plaintiff also alleges that "TI has disseminated information nationwide through the media, including Time, Newsweek and People magazines, as well as on nationally broadcast morning news programs. TI has presented information on local television and radio stations in Ohio, including programs in Cincinnati and Cleveland, Ohio." (Amended Complaint ¶ 102). Further, TI is alleged to have used spokepersons who traveled around the country speaking to organizations and groups and who appeared on shows such as Larry King Live, The McNeil/Lehrer Report, Good Morning America, Today and the network news. (Amended Complaint ¶ 103). In addition, Plaintiff contends that TI produced brochures or handouts regarding the history and current economic impact of the tobacco industry in certain states, including Ohio, and distributed film strips which were available at lending libraries. (Amended Complaint ¶ 104)

The parties agreed to use the discovery on TI's activities that was taken in the case of *Williams v. R.J. Reynolds Tobacco Co.*, 964 F.Supp. 257 (N.D.Ohio 1997), currently pending before Judge David D. Dowd in the Northern District of Ohio for the purpose of briefing and arguing TI's 12(b)(2) motion. The discovery undertaken in the *Williams* case was the deposition of TI's Senior Vice President William A. Adams. Plaintiff contends that Mr. Adams testified that TI always had someone who was responsible for activities in Ohio, including presenting TI's views to the general public.

TI has submitted the affidavit of Mr. Adams which states that "TI does not presently have any employees or offices in the State of Ohio, nor does it have an interest in, use, or possess any property in Ohio." Mr. Adams further states "TI is not licensed to do business in Ohio, nor does it do business in Ohio. Although TI opened a small office in Columbus, Ohio, on June 1, 1980, TI closed that office on October 31, 1983, and ceased making lease payments on May 31, 1984. TI's only activity related to Ohio since 1984 has been in connection with communicating TI's views to the Ohio state legislature and monitoring the legislature's activities. For this purpose, TI from time to time has retained lawyers and independent lobbyists in Ohio. On occasion, TI employees have visited Ohio to meet with lobbyists, to meet with members of the Ohio state legislature, and/or to undertake other activities directly relating to communicating TI's views to the legislature." (Adams Aff. ¶¶ 8–9).

While limited discovery concerning the jurisdictional issues took place and the issue of personal jurisdiction over TI was discussed in a status conference, there was no formal evidentiary hearing on the jurisdiction question. Accordingly, the showing that Plaintiff must make to establish that the Court has personal jurisdiction over TI is less than the usual preponderance of the evidence.

> When ... a district court rules on a jurisdictional motion to dismiss ... without conducting an evidentiary hearing, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.... To defeat such a motion, [the plaintiff] need only make a prima facie showing of jurisdiction.

> Furthermore, a court ... does not weigh the controverting assertions of the party seeking dismissal....

*Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir.1998) *citing Compu-Serve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996) (string citations omitted).

The Sixth Circuit adopted this rule in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts. *Id.* The Sixth Circuit notes that a defendant has recourse to further challenge jurisdiction by requesting an evidentiary hearing if written submissions raise disputed factual questions or issues of credibility. Moreover, jurisdictional arguments may be raised at trial. "It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction." *Id.* (citation omitted.) At both the evidentiary hearing and trial levels, a plaintiff must establish personal jurisdiction over the defendant by a preponderance of the evidence.

 Jurisdiction may be general or specific. General jurisdiction exists when a defendant's " 'continuous and systematic' conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state." *Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996) (*quoting in part Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437, 445–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Specific jurisdiction exists when "the lawsuit arises out of or is related to the defendant's contacts with the forum." *Id.* (citation omitted).

To establish personal jurisdiction over a defendant a plaintiff must satisfy both the state long arm statute and constitutional due process. *Id.* (citation omitted). Since the Ohio long arm statute reaches as far as the Due Process Clause of the Constitution of the United States will allow, *see R.L. Lipton Dist. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir.1987), the issue is narrowed to whether assertion of personal jurisdiction over TI would violate constitutional due process.

Plaintiff asserts fraud ·and conspiracy claims against TI arguing that TI was and is an agent of the tobacco manufacturers who acted in concert with the manufacturers to deceive plaintiff by obscuring the true dangers of smoking. (Amended Complaint ¶ 39) Plaintiff· alleges that as a tobacco industry trade representative, TI sought to influence Ohioans and promote smoking by publishing misinformation in numerous national and Ohio forums that smoking is not addictive; that it is important to the economy; and, that the dangers of smoking are not yet established. Such representations are alleged to have been made at ·the same time that the tobacco companies I were placing the mandated warnings on their products. (Amended Complaint ¶¶ 100–101). Plaintiff alleges that she and her husband relied the misrepresentations (and non-disclosures) of TI and the manufacturing defendants to begin and/or continue smoking. (See Amended Complaint ¶¶ 80,81,86,87,89).

Plaintiff argues that TI's business is disseminating information and gathering support for its sponsors—the tobacco manufacturers. Its audience is national in scope and its aim is to reach as many people as possible with its alleged misinformation regarding the health hazards (or lack thereof) of smoking.

 While Plaintiff argues that she has established both general and specific jurisdiction, her evidence in support of general jurisdiction fails to make even a prima facie showing of "continuous and systematic" activity in Ohio. Plaintiff states that TI registered with the Ohio Secretary of State on April 4, 1980, as a foreign nonprofit corporation. TI notes that it operated an office in Ohio from 1980–1983. Plaintiff states that TI did not withdraw it registration, but its statutory agent resigned and the registration was canceled by law on October 20, 1989. The only other contacts which Plaintiff notes are TI's lobbying efforts directed toward Ohio's legislature [6] and TI's dissemination

**6.** The Court will not consider TI's ongoing lobbying efforts in Ohio to support personal jurisdiction in accordance with the "government contacts" rule. That rule, originated in

of information through national publications and broadcasts which were also seen and heard in Ohio. TI asserts that although it presented information on at least two local broadcasts in Ohio, both appearances were several years ago. TI admits that it has hired third parties to make media buys for them, and that TI produced pamphlets regarding the history of tobacco and the economic impact of the tobacco industry on specific states. While Mr. Adams of TI did not know if a pamphlet had been distributed regarding Ohio, Plaintiff points to a TI publication list which indicates that a brochure was available for Ohio. Finally, TI has developed film strips which are available through lending libraries. Review of TI's contacts with Ohio indicates that the contacts specifically directed at Ohio have been minimal and sporadic. These activities do not indicate "continuous and systematic" dealings between TI and Ohio which would render TI amenable to any lawsuit in Ohio.

■ The closer question is whether Plaintiff has made a prima facie showing of specific jurisdiction. Specific jurisdiction may be premised on a single act of the defendant. *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In all personal jurisdiction cases, however "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Nationwide Mut. Ins. Co.,* 91 F.3d at 794 *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)

■ The Sixth Circuit applies a three part test for determining the "outer limits of in personam jurisdiction based on a single act." *Id.* The three elements of the test are: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id. citing Payne v. Motorists' Mutual Ins. Cos.,* 4 F.3d 452, 455 (6th Cir.1993) (*quoting Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

■ The purposeful availment requirement is satisfied when "the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a "substantial connection with the forum state," and when the defendant's conduct and connection with the forum are such that he "should reasonably anticipate being haled into court there." ' " *CompuServe, Inc.,* 89 F.3d at 1263 *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).) The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."[7] *Dean,* 134 F.3d at 1273. (citations omitted).

the District of Columbia, provides that personal jurisdiction may not be founded upon certain contacts with governmental agencies. *See Mueller Brass Co. v. Alexander Milburn Co.,* 152 F.2d 142 (D.C.Cir.1945); *Crane v. Carr,* 814 F.2d 758, 761–62 (D.C.Cir.1987), *rev'd on other grounds,* 894 F.2d 454 (D.C.Cir. 1990); *Klinghoffer v. S.N.C. Achille Lauro,* 937 F.2d 44, 51 (2d Cir.1991). The government contacts doctrine is supported by the First Amendment right "to petition the Government for redress of grievances." *Klinghoffer,* 937 F.2d at 51. The doctrine has been applied to lobbying efforts directed at both

federal and state legislatures and agencies. While the Sixth Circuit has not addressed or applied the doctrine, another district court in the Northern District of Ohio has recognized and applied the doctrine in a similar case finding that TI's lobbying efforts in Ohio cannot be used as a basis for personal jurisdiction. *Williams v. R.J. Reynolds Tobacco Co.,* 17 F.Supp.2d 706 (1998) (Dowd, J.)

7. Since personal jurisdiction must be based on the actions and contacts of the specific defendant at issue, *See CompuServe,* 89 F.3d at 1263 and *Dean,* 134 F.3d at 1273, the

As noted before, Plaintiff's Amended Complaint alleges that TI committed fraud by knowingly misrepresenting the dangers of smoking and by confusing consumers with information contradicting the required warnings on cigarette labels. Plaintiff contends that her reliance on TI's misrepresentations caused her and her decedent injury. Further, Plaintiff asserts that TI acted in concert or conspired with the cigarette manufacturers to mislead the public, including Plaintiff and her decedent, about the dangers of smoking, the manufacturers' manipulation of nicotine and the addictiveness of nicotine. Thus, Plaintiff contends that TI's statements, while mostly directed at a national audience, were seen and heard in Ohio and caused injury in Ohio and the subject of this lawsuit is the injury allegedly caused by TI's actions, both within and without Ohio.

In *Williams*, Judge Dowd determined that TI did not purposefully direct its activities toward the residents of Ohio. Rather, TI directed its message to a national audience, thus, the first prong of the three part test was not satisfied. Even if the first prong were satisfied, Judge Dowd determined that the contacts between TI and Ohio were not substantial enough to make jurisdiction over TI reasonable under the *Southern Machine Co.* test because as a "nationwide entity which has very little direct involvement with individual states outside of its lobbying activities ... [ ], TI does not harbor the expectation of being haled into this Court, making such personal jurisdiction 'unreasonable.'" *Williams*, No. 5:97CV0593 pp. 17–18.

Treating TI as a "nationwide entity" which is amenable to suit only in its state of incorporation or principal place of business is troubling in several respects. TI is a trade organization. Its business is to publish as widely as possible the messages that support its sponsors. Obviously the widest distribution would be the nation, but it is axiomatic that what is distributed and broadcast nationwide will be seen and heard in all the states. Certainly it is disingenuous for TI to contend that it did not intend to distribute its message to the residents of Ohio or any other state. Moreover, it is not obvious that TI's message is "pure speech" or "opinion" in contrast to advertising. TI is presumably paid by its sponsors—the tobacco manufacturers—to publish information, news or propaganda favorable to the sponsors.

The Sixth Circuit has determined that a foreign defendant's advertising in the forum state may serve as a basis of personal jurisdiction, fulfilling the "purposeful availment" portion of the three part test. *Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir.1990). In *Creech*, the Sixth Circuit determined that an Oklahoma medical center purposefully availed itself of the privilege of acting in Ohio by advertising the Center's services on the "Expect a Miracle" program which is broadcast in Ohio. The Court further determined that Creech's cause of action arose from the Center's activities in Ohio because Creech would not have been treated at the Center if she had not seen the Center's phone number on the "Expect a Miracle" program. The Court also determined that the district court's exercise of jurisdiction over the Center was reasonable finding:

> [W]here a defendant who purposefully directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.

*Id. (quoting Burger King,* 471 U.S. at 477, 105 S.Ct. 2174.) Moreover, when the first

---

Court declines to apply the so called "conspiracy theory of jurisdiction" in which the contacts of a defendant's co-conspirators with the forum state are attributed to the defendant in order to supply the minimum contacts necessary for personal jurisdiction. Personal jurisdiction over TI must be based on TI's contacts and actions within Ohio.

two elements of the three part test are present, an inference arises that the third factor—reasonableness—is also present. *See CompuServe, Inc.*, 89 F.3d at 1268; *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir.1988).

Interpreting the evidence in a light most favorable to Plaintiff, it appears that Plaintiff has presented a prima facie showing that TI has purposefully availed itself of the privilege of doing business in Ohio by reaching out to the residents of Ohio to spread information beneficial to its sponsors. Although the broadcasts and publications TI specifically directed at Ohio are several years old and it appears that there were no more than five to ten articles or broadcasts that were ever specifically directed to Ohio, those publications and broadcasts, as well as national publications and broadcasts which were seen and heard in Ohio, are allegedly the reason Plaintiff and her decedent began or continued to smoke. As noted previously, specific jurisdiction may be based on a single act if that act forms the basis of the lawsuit.

The second factor of the three part analysis is also satisfied in this case. The action arises out of TI's admittedly limited activity in Ohio. Plaintiff avers that TI had a duty not to spread information that it knew was false and could be damaging to people; that she and her decedent relied on the misinformation distributed by TI (as well as the tobacco manufacturers directly); that her reliance was justified; and that she and her decedent were injured as a result of their reliance. While this cause and effect relationship is much less clear than the situation in *Creech*, Plaintiff's Amended Complaint does contain the averments necessary to state a cause of action for fraud. It is Plaintiff's contention that she and her decedent saw and or heard the statements upon which they relied in Ohio. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Creech*, 908 F.2d at

80. Accordingly, Plaintiff makes a prima facie showing of the first two elements of the three part test.

The final element is whether the exercise of personal jurisdiction over TI would be unreasonable. TI has not shown any compelling reason why the exercise of jurisdiction would be unreasonable. TI argues that it is unreasonable for it to expect that it could be haled into court in all fifty states just because it publishes statements and information nationwide. It is sufficient that it be amenable to service in New York and Washington, D.C. However, if a defendant's business is to distribute the information its sponsors want disseminated and that information is false and misleading and causes injury in a state where it is received and the defendant is alleged to have knowingly participated in committing the fraud, it is unreasonable to believe that the defendant would not be subject to a lawsuit in the state where the false statements allegedly caused the injury. There is no compelling reason not to allow the inference of reasonableness in this situation.

Accordingly, the Court finds that Plaintiff has established, albeit barely, a prima facie showing of personal jurisdiction over TI.

## II. The Tobacco Defendants' 12(b)(6) Motion

The Tobacco Defendants argue that none of claims alleged by Plaintiff in the Amended Complaint state a claim upon which relief may be granted; thus, the Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. 12(B)(6). On a motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6), the court's inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *See Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808 (3rd Cir.1990). The court must construe

the pleadings and affidavits in a light most favorable to the plaintiff. *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177, 114 S.Ct. 1218, 127 L.Ed.2d 564 (1994) *quoting Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980).

■ However, though construing the complaint in favor of the non-moving party, a trial court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See City of Heath, Ohio v. Ashland Oil, Inc.*, 834 F.Supp. 971, 975 (S.D.Ohio 1993). Thus, a plaintiff must plead more than bare legal conclusions. "[A] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) *quoting Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993).

## A. Claims covered by the Ohio Product Liability Act

■ The Tobacco Defendants contend that The Ohio Product Liability Act applies to and bars all of Plaintiff's claims. The Act governs all "product liability claims" filed on or after January 5, 1998. Ohio Rev.Code §§ 2307.72(A), (B). The Act defines a "product liability claim" as any claim for:

> [D]eath, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:

(1) The design, formulation, production, construction, creation, assembly, rebuilding, testing or marketing of that product;

(2) Any warning or instruction, or lack of warning or instruction, associated with that product;

(3) Any failure of that product to conform to any relevant representation or warranty.

Ohio Rev.Code § 2307.71(M). Review of the Amended Complaint reveals that most of Plaintiff's claims fall under and are governed by the Act. Specifically, the Court finds that Plaintiff's claims of Strict liability (Amended Complaint, ¶¶ 26–32—design defect, inadequate warning), Negligent, wilful and wanton misconduct (Amended Complaint, ¶¶ 33–35—inadequate testing, research, selling, marketing and warning), Strict liability for misrepresentation (Amended Complaint, ¶¶ 90–91—failure to disclose/warn), Express warranty (Amended Complaint, ¶¶ 92–93) are governed by the Act.

Defendants argue that the Act bars liability on Plaintiff's claims because the inherent risks of smoking were common knowledge. Specifically, Defendants contend that § 2307.75(E) bars liability based on design defects when the product possesses purported risks which are a matter of common knowledge.[8] Similarly, Defendants argue that § 2307.76(B) of the Act bars strict liability claims based on lack of adequate warnings when the risk is open and obvious or is a matter of common knowledge.[9] In support of their argument that the risks of smoking were commonly known, Defendants argue that sections 2307.75(E) and 2307.76(B) codify the prin-

---

8. Section 2307.75(E) provides:

A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

9. Section 2307.76(B) provides:

A product is not defective due to lack of warning or instruction or inadequate warning or instruction as a result of the failure of its manufacturer to warn or instruct about an open and obvious risk or a risk that is a matter of common knowledge.

ciples of comment I to § 402A of the Restatement (Second) of Torts which specifically refers to cigarettes and states that no liability may be imposed for harm caused by ordinary cigarettes. Comment I provides:

> Many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from overconsumption. Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini, as an instrument of torture, That is not what is meant by "unreasonably dangerous" in this Section. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. Good whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics; but bad whiskey, containing a dangerous amount of fusel oil, is unreasonably dangerous. *Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful; but tobacco containing something like marijuana may be unreasonably dangerous.*

Emphasis added. Defendants cite several authorities in support of their assertion that Ohio has adopted the Restatement (Second) of Torts, § 402(A), Comment I including 3 Ohio Jury Instructions, Civil 351.09 at 202(1993)[10], *Blackburn v. R.J. Reynolds Tobacco Company,* Case No. C–3–97–552, Decision and Entry adopting Report and Recommendation of Magistrate Judge (S.D.Ohio April 9, 1998) (Magistrate Judge noted that Ohio had adopted

---

**10.** The Comment to 3 Ohio Jury Instructions 351.09 at 201(1996) provides in part:
> *Revised Code § 2307.75(E), covering products with inherent risks that are recognized by the ordinary consumer is based on Comment [I] to the Restatement(Second) of Torts, § 402A.* Comment [I] makes clear that liability will be imposed only if the plaintiff shows that the aspect of the product that

§ 402A and Comment I and held that "given the common knowledge of the risks of cigarette smoking," a strict liability products liability action is barred.); *Gawloski v. Miller Brewing Co.,* 96 Ohio App.3d 160, 644 N.E.2d 731, 735–36 (1994) ("Ohio has codified [§ 402A and Comment I] in R.C. 2307.76(B)").

In *Williams,* Judge Dowd determined that it was unnecessary to decide whether Ohio has adopted § 402A and Comment I in the Ohio Product Liability Act because, upon review of *Paugh v. R.J. Reynolds Tobacco Co.,* 834 F.Supp. 228 (N.D.Ohio 1993) and *Roysdon v. R.J. Reynolds,* 849 F.2d 230, 236 (6th Cir.1988), and considering that the plaintiffs smoked after the date when the Surgeon General required warnings on cigarette packages, "as a matter of law, it was 'common knowledge' that tobacco was harmful at the relevant time periods here by virtue of the warnings on cigarettes required by the Labeling Act." *Williams, supra* at 718.

In *Paugh,* a smoker's widow brought a products liability action against the manufacturer of the cigarettes that her husband smoked from 1940–1990. The court dismissed the plaintiff's strict liability claims holding that "[t]he dangers posed by tobacco smoking have long been within the ordinary knowledge common to the community." *Paugh,* 834 F.Supp. at 230. The court further noted:

> Much as in the case of alcohol, users of tobacco products have made a consumer choice in the face of health risks that are common to ordinary knowledge.... That some ignore or underestimate these risks has little bearing on the extent to which knowledge of the dangers

caused the harm can be eliminated or is more dangerous than the ordinary consumer would expect. *Comment [I] explicitly cites* sugar, alcohol, *tobacco,* butter and castor oil *as examples of products that are not defective, and these products accordingly are deemed to fall within the exemption as a matter of law.*
(Emphasis added).

are salient within the community .... the risks posed by smoking are an inherent characteristic of cigarettes, and ... knowledge of these risks has been common to the community since well before 1966....

*Id.* at 231. (citations omitted.)

Similarly, in *Roysdon,* a case brought by a plaintiff who had been smoking since 1974, the Sixth Circuit, citing the district court's finding that "tobacco has been used for over 400 years and its characteristics have also been fully explored. Knowledge that cigarette smoking is harmful to health is widespread and can be considered part of the common knowledge of the community", held that: "the extensive information regarding the risks of smoking available to the public precluded the existence of a jury question as to whether cigarettes are unreasonably dangerous." *Roysdon,* 849 F.2d at 236, *citing Roysdon,* 623 F.Supp. 1189, 1192.

Plaintiff attempts to distinguish *Paugh* and *Roysdon* on the ground that they were decided before the Waxman hearings in 1994, which, Plaintiff argues, illuminated "the conspiracy to defraud the American public engaged in by the Defendants." (Plaintiff's Mem. in Opp. p. 13) While more information may be available about Defendants' allegedly "intentional manipulation" of nicotine levels and their campaign to resurrect a "smoking controversy" that information does not negate the public's long held knowledge that cigarettes are (and were) dangerous to health.

In this case the Plaintiff and her decedent began smoking in 1968 and 1971, respectively, well after the Federal Cigarette Labeling and Advertising Act ("the Labeling Act") became effective on January 1, 1966.[11] The case law is well settled that the health hazards of smoking were within the ordinary citizen's "common

knowledge" by 1968 when Mrs. Hollar began smoking and in 1971 when Mr. Hollar began smoking. Accordingly, Plaintiff's claims based on strict liability—Tobacco: Strict Liability; Tobacco: Negligent and Willful, Wanton Misconduct; Tobacco: Strict Liability Misrepresentation; and Tobacco: Express Warranty—are barred by the Act and are dismissed.

## B. Implied Warranty Claim

 Plaintiff asserts a claim for breach of implied warranties of merchantability and fitness for a particular purpose. Defendants contend that such a claim is not cognizable under Ohio law. Specifically, Defendants argue that prior to enacting the Ohio Product Liability Act, the Ohio Supreme Court, in *Temple v. Wean,* 50 Ohio St.2d 317, 364 N.E.2d 267 (1977), adopted § 402A's version of strict liability and ruled that Ohio's common law product liability theory of implied warranty no longer exists separate and apart from the product liability theory of strict liability in tort. When the Ohio legislature enacted the Act in 1988 it adopted the *Temple* theory of strict liability under which the theory of implied warranty was subsumed.

Plaintiff argues that every common law theory of product liability survives the enactment of the Act unless specifically eliminated by the Act. In ruling on this same issue, the court in *Williams* held that a claim for breach of implied warranty is governed by the Ohio Products Liability Act:

In *Temple v. Wean, supra* at 320, 364 N.E.2d 267, the Ohio Supreme Court held that a claim for breach of implied warranty is "virtually indistinguishable" from a claim for strict liability in tort. Subsequently, the General Assembly passed the Ohio Product Liability Act. While not expressly mentioning claims

---

**11.** The Labeling Act required manufacturers to include a warning that "cigarette smoking may be hazardous to health" on each package of cigarettes. That warning was strengthened in 1970 to "Warning: The Surgeon General Has Determined That Cigarette Smoking Is Dangerous to Your Health." 15 U.S.C. § 1333 (1965), amended by 15 U.S.C. § 1333 (1970).

for breach of implied warranty, the Act governs all claims for strict liability in tort. Therefore, courts faced with a claim for implied warranty have followed *Temple,* holding that a claim for implied warranty has been merged with a claim for strict liability in tort. *Ditto v. Monsanto Company,* 867 F.Supp. 585, 595 (N.D.Ohio 1993), *aff'd* 36 F.3d 1097 (6th Cir.1994); *see also Nadel v. Burger King Corporation,* 119 Ohio App.3d 578, 695 N.E.2d 1185, 1189 (1997) (Ohio Product Liability Act has preempted claim for implied warranty), appeal not allowed by 80 Ohio St.3d 1415, 684 N.E.2d 706 (Ohio Oct. 1, 1997) (TABLE, NO. 97–1386); *Long v. Tokai Bank of California,* 114 Ohio App.3d 116, 127, 682 N.E.2d 1052 (1996) (implied warranty claims governed by Ohio Product Liability Act), appeal not allowed by 77 Ohio St.3d 1547, 674 N.E.2d 1186 (Ohio Jan. 29 1997) (TABLE, NO. 96–2460).

*Williams, supra* at 721–22. This Court concurs with Judge Dowd and finds that Plaintiff's claim for breach of implied warranty is governed by the Ohio Products Liability Act and that it fails to state a claim for relief for the same reasons (as explained in section A above) that the other claims governed by the Act failed. Accordingly, Defendants' Motion to Dismiss Plaintiff's breach of implied warranty claim is granted.

## C. Fraud and Misrepresentation

Plaintiff asserts in her Memorandum in Opposition (Document # 58) that she has alleged a claim for misrepresentation under R.C. § 2307.77 as well as a common law fraud claim. The Amended Complaint does not mention § 2307.77, nor does the Amended Complaint make an averment that tracks the language of § 2307.77.[12] Rather, Plaintiff's misrepresentation claim

asserts essentially a failure to warn or a failure to disclose claim. To the extent that such a claim is made under the Ohio Products Liability Act, it fails for the reasons set forth in section A above—because the dangers of cigarette smoking are commonly known.

Plaintiff's common law fraud claim goes beyond a products liability claim. That claim asserts that Defendants had extra knowledge concerning the harmful effects of cigarettes, that they withheld that knowledge despite a duty to disclose the knowledge, and in fact made misrepresentations about cigarettes knowing such statements were false in an effort to sell more cigarettes. Further, Plaintiff alleges that she and her decedent relied on Defendants' intentional misrepresentations or omissions to begin or continue smoking and were damaged as a result. As Judge Dowd recognized in *Williams* (where the complaint was virtually identical to the Amended Complaint in this case), Plaintiff's common law fraud claim is based primarily on Defendants' breach of their alleged duty not to deceive and is not limited to a product liability claim. *Williams, supra* at 719 (referencing *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 524–30, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992)) (recognizing distinction between fraud actions based on duty not to deceive and actions based on smoking and health); *City and County of San Francisco v. Philip Morris, Inc.,* 957 F.Supp. 1130, 1140 (N.D.Cal.1997) ("California law recognizes a distinction between claims based on fraudulent conduct and claims based on defects in a product."). Thus, Plaintiff's fraud claim is not barred by the Ohio Product Liability Act.

To state a claim for fraud under Ohio law a plaintiff must plead the

---

12. R.C. § 2307.77 provides:
 A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer. A product may be defective because it did not conform to a representation even though its manufacturer did not act fraudulently, recklessly, or negligently in making the representation.

following elements with the particularity required by Fed.R.Civ.P. 9(b):

(a) a representation or, where there is a duty to disclose, concealment of a fact,

(b) which is material to the transaction at hand,

(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

(d) with the intent of misleading another into relying upon it,

(e) justifiable reliance upon the representation or concealment, and

(f) a resulting injury proximately caused by the reliance.

*Williams, supra* at 719, *citing Burr v. Board of County Commissioners of Stark County,* 23 Ohio St.3d 69, 73, 491 N.E.2d 1101 (1986), *quoting Cohen v. Lamko, Inc.,* 10 Ohio St.3d 167, 169, 462 N.E.2d 407 (1984). A duty to disclose and a corresponding liability for failure to disclose arises when:

the party fails to exercise reasonable care to disclose a material fact which may justifiably induce another party to act or refrain from acting, and the nondisclosing party knows that the failure to disclose such information to the other party will render a prior statement or representation untrue or misleading.

*Williams, supra* at 719, *quoting Miles v. McSwegin,* 58 Ohio St.2d 97, 100, 388 N.E.2d 1367 (1979).

The fraud and misrepresentation claim of the Amended Complaint contains 53 paragraphs, many of which cite dates, specific content and the names of the writer, speaker and their affiliation. In short, the Amended Complaint is very detailed. A careful review of the Amended Complaint reveals that Plaintiff has alleged and supported all of the elements of a fraud and fraudulent concealment cause of action.

Specifically, Plaintiff alleges that the Defendants "publicly promised to sponsor independent research on the risks of smoking, claiming they would make health the basic concern paramount to any other consideration in their business. The Tobacco Companies also promised to cooperate closely with public health officials. By making these promises the Tobacco Companies assumed a duty. At the time these promises were made, the Tobacco Companies had no intent to comply." (Amended Complaint ¶ 43) Plaintiff further alleges that despite Defendants' representations to undertake independent research and protect the public health, they failed to make the public health of cigarette smokers a concern. Instead they concealed the damaging information and knowledge that they gained as a result of their studies and research and instead designed a coordinated, industry wide strategy to mislead, confuse and conceal from the public the true dangers of smoking. (Amended Complaint ¶ 44) The Amended Complaint describes in detail the tobacco manufacturers' internal reports regarding negative information regarding smoking and health and recites the public statements and advertisements of the Defendants denying the health risks that they knew existed. (Amended Complaint ¶¶ 40–84) The allegations in the Amended Complaint support Plaintiff's averments that Defendants knowingly made false representations to the public concerning the safety of cigarettes, the addictiveness of cigarettes, and the amount of nicotine in cigarettes with the intent to induce the public to purchase more cigarettes.

Further, Plaintiff avers that she and her decedent relied upon the misrepresentations or omissions of the Defendants that were noted in the Amended Complaint, and cites an Ohio Common Pleas decision for the proposition that if mass advertising and misrepresentations have been made, reliance on such may be presumed. *Owens–Corning Fiberglas v. American Centennial Ins. Co.,* 74 Ohio Misc.2d 183, 660 N.E.2d 770 (1995). Some of the representations and advertisements described in the Amended Complaint were published or

broadcast during the years in which Mr. and Mrs. Hollar smoked. While reliance may be hard to prove given that Mr. Hollar is deceased, the Amended Complaint contains the allegations necessary to avoid dismissal at this stage.

Finally, the Amended Complaint avers that the "misrepresentations, omissions and concealments were made deliberately, willfully, maliciously and/or recklessly with the intent to mislead Mr. and Mrs. Hollar into reliance upon them and were material in causing Mr. and Mrs. Hollar to purchase cigarettes." (Amended Complaint ¶ 86) The Amended Complaint states that Plaintiff and her decedent had no knowledge of the Defendants' alleged wrongdoing, including Defendants' deliberate efforts to give Plaintiffs the materially false impression that nicotine is not addictive and that Defendants are not manipulating the nicotine levels of their cigarettes. Further, Plaintiffs could not have discovered Defendants' wrongdoing due to Defendants' attempts to keep such internal information from reaching the Hollars. (Amended Complaint ¶ 88). The Amended Complaint alleges all of the elements of common law fraud and fraudulent concealment with sufficient factual support. Moreover, the fraud and misrepresentation claim is pled with the particularity required by Rule 9(b). Accordingly, Defendants' Motion to Dismiss Plaintiff's common law fraud and misrepresentation claim is denied.

## D. Conspiracy and concerted action

The court in *Williams* succinctly set forth the Ohio law on civil conspiracy as follows:

'Civil conspiracy' under Ohio law has been defined as 'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.' *Minarik v. Nagy*, 8 Ohio App.2d 194, 196, 193 N.E.2d 280 (1963) (citations omitted). However, it has long been established that an under-

lying tort is required in order for a civil conspiracy claim to be successful. *Id.* at 195, 193 N.E.2d 280; *see also Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (1996). Fraud committed by a party can serve as the underlying tort in the civil conspiracy. *Williams v. ITT Financial Services*, No. C–960234, 1997 WL 346137, *11 (Hamilton App.1997).

*Williams*, supra at 722.

■ The Amended Complaint states that the Defendants, individually and as members of the tobacco industry, were in possession of medical and scientific data that indicated that the use of cigarettes was hazardous to health since at least 1950 and failed to act on such information. Moreover, Defendants conspired and acted in concert to deprive the public and consumers of cigarettes of the medical and scientific data and further misrepresented the adverse health effects of cigarettes. CTR and TI, in concert with the tobacco manufacturers have over the years disseminated information designed to lead the public to underestimate the health consequences of smoking. The Defendants are alleged to have known the information that was disseminated was false and misleading. (Amended Complaint ¶¶ 97–98) Plaintiff alleges that she suffered damages as a result of Defendants' actions.

Plaintiff, having adequately pled fraud as a predicate act, has adequately pled the elements of civil conspiracy under Ohio law in her Amended Complaint. Accordingly, Defendants' motion to dismiss this claim is denied.

## E. Federal Preemption

■ As an alternative argument Defendants assert that Plaintiff's claims should be dismissed because they are preempted by the Federal Cigarette Labeling and Advertising Act of 1969. Since most of Plaintiff's claims have been dismissed, the Court will only review the remaining fraud and conspiracy claims to

determine if they have been preempted by the 1969 Labeling Act.

The scope of the preemptive effect of the Labeling Act, both the 1965 and 1969 versions, was addressed by the Supreme Court in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone,* the plaintiffs were Rose Cipollone, who began smoking in 1942 and died of lung cancer in 1983, and her husband. The Cipollones asserted several common law claims based on New Jersey law in the categories of strict liability, negligence, express warranty and intentional tort. Respondent Liggett argued that all of the Cipollone's claims were preempted by the Labeling Act. The Supreme Court reviewed the language of the Act as enacted in 1965, effective January 1, 1966, and the language of the Act as amended by the Public Health Cigarette Smoking Act of 1969. The 1969 Act strengthened the warning required on cigarette packages, banned cigarette advertising in any medium of electronic communication subject to FCC jurisdiction and modified the preemption provision. The Supreme Court determined that the preemptive scope of both the 1965 and 1969 Acts was governed entirely by the express preemption provisions contained in § 5 of both Acts.

With respect to the 1965 Act, the Court determined that the Act preempts "state and federal rulemaking bodies from mandating particular cautionary statements and did not pre-empt state-law damages actions." *Id.* at 519–520, 112 S.Ct. 2608. Congress broadened the scope of the preemptive provision of the Act in 1969 barring not simply "statements" as in the 1965 Act but "requirements[s] or prohibition[s] ... imposed under State law." Moreover, the 1969 Act reaches beyond statements in "advertising" to obligations "with respect to the advertising or pro-

motion" of cigarettes. *See id.* at 520, 112 S.Ct. 2608. Thus, the Court held that the 1969 Act preempts some common law damages actions in addition to preempting positive enactments. The Court analyzed each of the Cipollone's claims to determine which, if any, were preempted by the 1969 Act. The Court noted:

> The central inquiry in each case is straightforward: we ask whether the legal duty that is the predicate of the common-law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,' ...

*Id.* at 524, 112 S.Ct. 2608. Among the claims assert by the Cipollones was a claim for fraudulent misrepresentation and a claim for conspiracy to misrepresent or conceal material facts. After reviewing each claim the Court held that the Cipollone's fraud claim alleging intentional misrepresentation both by false representation of a material fact and by concealment of a material fact was not preempted because it was based on a state law duty not to make false statements of material fact or to conceal such facts. To the extent that the Cipollone's intentional fraud claim was based on allegedly false statements made in advertisements, it was not preempted because such claims "are predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Id.* at 528–529, 112 S.Ct. 2608.[13]

Similarly, the Court determined that the Cipollone's conspiracy claim, which alleged a conspiracy among the Respondents to misrepresent or conceal material facts about the health hazards of smoking and was based on a predicate duty not to conspire to commit fraud and was not preempted for the same reasons that Peti-

---

13. The Court determined that the Cipollone's fraud claim based on the Respondent's alleged neutralization of federally mandated warnings through their advertisements was predicated on a state law prohibition against statements in advertising that tend to minimize the health hazards associated with smoking; and thus, that claim was preempted.

tioner's intentional fraud claim was not preempted. *Id.* at 530, 112 S.Ct. 2608.

Plaintiff's misrepresentation and conspiracy claims are based on the same premises as the intentional fraud and conspiracy claims asserted in *Cipollone.* As the Supreme Court determined in *Cipollone,* those claims are not preempted by the 1969 Labeling Act.

### F. Insufficiency of Service of Process

RJR contends that the action against it should be dismissed because although RJR was listed on the Complaint as a defendant, Plaintiff served the original complaint in this action on RJR's parent company, R.J.R. Nabisco, Inc. at 1301 Avenue of the Americas, New York, New York 10019. RJR raised insufficiency of service as an affirmative defense in its Answer to the Complaint. On her Amended Complaint Plaintiff again lists RJR as a defendant and lists its correct address as 401 N. Main St., Winston–Salem, N.C. 27102. Plaintiff presumably served the Amended Complaint upon RJR's counsel. RJR does not contend that the Amended Complaint was improperly served. Accordingly, RJR's motion to dismiss for insufficiency of process is denied.

### Conclusion

For the reasons set forth above, the Motion of the Tobacco Defendants to Dismiss the Amended Complaint (Document # 78) is GRANTED as to Plaintiff's claims for strict liability (Amended Complaint ¶¶ 26–32); negligent, willful and wanton misconduct (Amended Complaint ¶¶ 33–35); strict liability for misrepresentation (Amended Complaint ¶¶ 90–91); express warranty (Amended Complaint ¶¶ 92–93); and implied warranty (Amended Complaint ¶¶ 94–96) and DENIED as to Plaintiff's claims for fraud and misrepresentation (Amended Complaint ¶¶ 36–89) and conspiracy and concerted action (Amended Complaint ¶¶ 97–107). RJR's motion to dismiss for insufficiency of process is DENIED. The Motion of TI for reconsideration of its motion to dismiss for lack of personal jurisdiction (Document # 44) is DENIED.

IT IS SO ORDERED.