Roger **HEARN, personally and as personal representative of the estate of Winona M. Hearn, his deceased wife, and Lori Ann Peterson, daughter of the decedent, Plaintiffs,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, a fully owned subsidiary of R.J Reynolds Tobacco Holdings, Inc., Brown & Williamson Inc., a foreign corporation and a subsidiary of British American Tobacco Industries, Plc., a foreign corporation, and entity, Brown & Williamson Tobacco Corp., Defendants.**

No. CIV–02–1517–PHX–ROS.

United States District Court,
D. Arizona.

Aug. 19, 2003.

Patrick Allen Plummer, Plummer & Associates PLC, Phoenix, AZ, for Plaintiffs.

Brian Michael Goodwin, Lori V. Berke, Shughart, Thomson & Kilroy PC, Howard Ross Cabot, Christopher Stuart Coleman, Brown & Bain, PA, Phoenix, AZ, Scott C. Walker, Jeffrey J. Jones, Columbus, OH, for Defendants.

## ORDER

SILVER, District Judge.

### I. Introduction

Plaintiffs, Robert Hearn, personally and on behalf of his deceased wife, Winona M. Hearn, and her daughter Lori Ann Peterson, seek relief for damages they have suffered as a result of Winona Hearn's smoking-related death. The Defendants in this action, producers of the cigarettes consumed by Winona Hearn, include R.J. Reynolds Tobacco Holdings Inc., British American Tobacco Industries, Plc., and Brown & Williamson Tobacco Corporation. Defendants petition this Court to dismiss Plaintiffs' Complaint. For the reasons stated below, this Court will grant in part and deny in part Defendants' Motion to Dismiss.

### II. Background

#### A. Relevant Facts

For a substantial period of time, Winona Hearn purchased and smoked cigarettes manufactured by the Defendants (Complaint at ¶ 21) (Doc. # 1) (attached to Notice of Removal). She began smoking in 1950 at the age of sixteen, allegedly induced into the habit via extensive advertising campaigns sponsored by Defendants (Response at 8). Plaintiffs allege that Winona was not aware of all detrimental risks that smoking posed to her health when she began the habit (*Id.* at ¶ 22). Moreover, Plaintiffs allege that when Winona finally became aware of the risks, upon enaction of the Federal Labeling Act in 1969, it was too late to stop due to the severity of her addiction (*Id.* at ¶ 24). Plaintiffs allege

that Winona was diagnosed with lung cancer in April of 2000, resulting in her death in November of the same year (*Id.* at ¶ 23). Further, it is claimed that if Winona Hearn had known about the risks smoking posed to her health early enough she would have quit (*Id.* at ¶ 24). Plaintiffs list a number of injuries suffered by Winona Hearn prior to her death and after she learned she had cancer, including but not limited to lung cancer, shortness of breath, anxiety, fear, mental and emotional distress, which are allegedly attributable to the conduct of the Defendants (*Id.* at ¶ 25).

#### B. Procedural History

On August 8, 2002 Plaintiffs filed their Complaint, alleging twelve separate counts against Defendants including: (1) negligence; (2) strict liability; (3) false representation; (4) breach of implied warranty; (5) breach of warranty of fitness for a particular purpose; (6) common law wrongful death; (7) statutory wrongful death; (8) punitive damages; (9) negligent infliction of emotional distress; (10) fraudulent concealment; (11) civil conspiracy; and (12) survival claims.[1] (Doc. # 1)[2]. Thereafter, Defendants jointly filed a timely Motion to Dismiss, relying primarily on the "common knowledge" doctrine relating to the dangers of smoking and the preemption doctrine under the Federal Labeling Act (Doc. # 11). Plaintiffs filed a timely Response, asserting that the Federal Labeling Act does not bar their claims and that the dangers of smoking were not commonly known when Winona began to smoke (Doc. # 14). Defendants filed a timely Reply, reiterating the applicability of both doctrines (Doc. # 21).[3] For rea-

---

1. Complaint was originally filed in Maricopa County Superior Court and was then subsequently removed to federal court under 28 U.S.C. § 1332, diversity jurisdiction (Doc. # 1).

2. Plaintiffs previously amended their Complaint on three separate occasions (Doc. # 1).

3. Without leave of Court, Defendants thereafter filed a Joint Submission of Supplemental Authority in support of their argument (Doc.

sons mentioned below, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

## III. Discussion

### A. Jurisdiction and Applicable Law

The purported amount of compensatory and punitive damages sought by Plaintiffs appears to exceed $75,000. Moreover, upon filing their Complaint, Plaintiffs and Defendants shared no common citizenship—Plaintiffs were citizens of Arizona, Idaho or Utah, and Defendants were neither incorporated nor had any principle place of business in Arizona, Idaho or Utah. Therefore, this Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, diversity jurisdiction. Both parties have stipulated and established that Arizona substantive law applies in resolving the following issues (see Responses to Judge Silver's Order on Supplemental Briefing on Choice of Law Issues, Doc. # 30, 31).

### B. Legal Standard for Motion to Dismiss

A court may not dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Barnett v. Centoni*, 31 F.3d 813, 813 (9th Cir.1994) (citing *Buckey v. Los Angeles*, 957 F.2d 652, 654 (9th Cir.1992)); *see Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir.1995); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir.1981). "The federal rules require only a 'short and plain statement of the claim showing that the pleader

is entitled to relief.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quoting Fed.R.Civ.P. 8(a)). "The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim." *Id.* at 249 (quotation marks omitted). "All that is required are sufficient allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir.1991) (citing *Conley*, 355 U.S. at 47, 78 S.Ct. 99; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Indeed, though "'it may appear on the face of the pleadings that a recovery is very remote and unlikely[,] . . . that is not the test.'" *Gilligan*, 108 F.3d at 249 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). "'The issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.*

When analyzing a complaint for failure to state a claim, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir.1996); *see Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the district court must assume that all general allegations "embrace whatever specific facts might be necessary to support them." *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir.1994), *cert. denied*, 515 U.S. 1173, 115 S.Ct. 2640, 132 L.Ed.2d 878 (1995) (citations omitted).

"Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable

---

# 22). The Plaintiffs filed a timely Response to the Defendants' first Submission (Doc. # 23), which Defendants responded to with a second Submission of Supplemental Authority (Doc. # 25). Plaintiffs then filed a timely

Response to Defendants' Second Submission of Supplemental Authority (Doc. # 27). Most recently, Plaintiff filed its own First Submission of Supplemental Authority (Doc. # 32).

legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.1988); *see* William W. Schwarzer et al., *Federal Civil Procedure Before Trial* § 9:187, at 9–46 (2002) (Judge R. Silver, contributing editor). Alternatively, dismissal may be appropriate when the plaintiff has included sufficient allegations disclosing some absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783, n. 1 (9th Cir.1997) ("If the pleadings establish facts compelling a decision one way, that is as good as if depositions and other ... evidence on summary judgment establishes the identical facts."); *see also Federal Civil Procedure Before Trial* § 9:193, at 9–47 (Judge R. Silver, contributing editor).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990); *see Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir.2001). Indeed, "a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 (9th Cir.1998) (citing *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993)). " 'However, material which is properly submitted *as part of the complaint* may be considered' on a motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.), *cert. denied*, 512 U.S. 1219, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994) (quoting *Hal Roach Studios*, 896 F.2d at 1555 n. 19) (emphasis in original); *see Federal Civil Procedure Before Trial* § 9:212, at 9–54 (Judge R. Silver, contributing editor). In addition, "even if the plaintiff's complaint does not explicitly refer to" a document, "a district court ruling on a motion to dismiss may consider a document the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies" because this prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based[.]" *Parrino*, 146 F.3d at 705–06. At this stage of the litigation, however, the district court must resolve any ambiguities in the considered documents in the plaintiff's favor. *See Int'l Audiotext Network, Inc. v. AT & T Co.*, 62 F.3d 69, 72 (2d Cir.1995); *see also Smith*, 84 F.3d at 1217; *Miree*, 433 U.S. at 27 n. 2, 97 S.Ct. 2490.; *Federal Civil Procedure Before Trial* § 9:212.1c, at 9–55.

### C. Analysis

#### 1. Restatement (Second) of Torts Argument

Defendants argue that the Restatement (Second) of Torts requires dismissing Plaintiffs' claims for (1) negligence, (2) strict liability, (3) breach of implied warranty, and (4) breach of fitness for a particular purpose. Specifically, Defendants argue that (1) the plain language of Comment i of § 402A, Restatement (Second) of Torts (1965) ("Restatement") bars, as a matter of law, all products liability claims based on tobacco; and, alternatively, (2) even if the plain language of Comment i does not bar the products liability claims, the Court should take judicial notice of facts establishing that the Restatement's "common knowledge" doctrine completely defeats them. For the reasons mentioned below, this Court finds neither of Defendants' arguments persuasive and will not grant dismissal of Plaintiffs' claims based on this argument.

#### a. Products Liability Claims in Arizona

In Arizona, courts have expressly adopted the language under § 402A of the Restatement when dealing with strict liability defective product claims. *O.S. Stapley Co. v. Miller*, 103 Ariz. 556, 447 P.2d 248 (1968). According to § 402A, in order for Plaintiffs to recover under this theory,

they must show that (1) the product was sold in a defective condition *unreasonably dangerous* to the user, (2) the defective condition was the proximate cause of the Plaintiff's injury, and (3) that Plaintiffs have in fact been injured. *Lunt v. Brady Manufacturing Corp.* 13 Ariz.App. 305, 475 P.2d 964 (1970) (emphasis added). While negligence claims based on a product defect require different elements, Plaintiffs are still required to prove the product unreasonably dangerous. *See, e.g., Mather v. Caterpillar Tractor Corp.,* 23 Ariz.App. 409, 533 P.2d 717, 719 (1975) ("In both instances [negligence and strict liability] appellant had to prove that the [product] was in a defective condition and unreasonably dangerous."). Moreover, in Arizona, when a complaint alleges product liability claims under theories of both breach of implied warranties and strict liability, those theories merge: "the theory of liability under implied warranty has been merged into the doctrine of strict liability in tort, so that it is on this latter doctrine that the plaintiff's claim must stand or fall." *Scheller v. Wilson Certified Foods, Inc.,* 114 Ariz. 159, 559 P.2d 1074, 1076 (App.1977). Therefore, all of Plaintiffs' product liability claims will fail if, as a matter of law, Defendants' products are not unreasonably dangerous.

The term "unreasonably dangerous" is defined in Comment i of § 402A. Comment i states that, "The [unreasonably dangerous] article must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." This test is referred to as the "common knowledge" doctrine. Courts in Arizona have cited to Comment i with approval and applied it on numerous occasions. *See Raschke v. Carrier Corpora-*

*tion* 146 Ariz. 9, 703 P.2d 556 (1985) (affirming summary judgment against gas furnace manufacturer because it is common knowledge that adequate ventilation is required for its proper operation); *Scheller v. Wilson Certified Foods, Inc.,* 114 Ariz. 159, 559 P.2d 1074 (App.1977) (affirming summary judgment in favor of defendant because the dangers of eating uncooked pork are common knowledge barring plaintiffs' claims); *N. Brown v. Sears, Roebuck & Co.,* 136 Ariz. 556, 667 P.2d 750 (App.1983) (affirming summary judgment in favor of electrical extension cord manufacturer because it is common knowledge that frayed or cut electrical cords pose a dangerous threat to people who use them).

### b. Comment i

Under Comment i of § 402A, the Restatement expressly lists certain products as not being unreasonably dangerous:

Ordinary sugar is a deadly poison to diabetics, and castor oil found use under Mussolini as an instrument of torture. That is not what is meant by unreasonably dangerous in this Section. **Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful**; but tobacco containing something like marijuana may be unreasonably dangerous.

(emphasis added). While Comment i deems "smoking" harmful, it also states that "good tobacco" is not unreasonably dangerous.

Defendants argue that their products fall under the Restatement's definition of "good tobacco," rendering Plaintiffs unable to state a claim under their various product liability theories. Plaintiffs counter that Defendants' products are not "good tobacco" due to the addition of other substances harmful to Plaintiffs,[4] and there-

---

4. Plaintiffs allege that Defendants were involved in a campaign designed "to misrepre-

sent their actual role in manipulating the ad-

fore, the claims survive a Motion to Dismiss. Defendants appear to argue that even if Plaintiffs make such allegations, their products still fall within the Restatement's definition of "good tobacco."

Unfortunately, the Restatement fails to provide any further guidance on what constitutes "good tobacco." Further, no published Arizona case law exists on this issue. Because Arizona courts have not yet applied Arizona law to the circumstances of this case, the Court must "make a reasonable determination of the results the highest state court would reach if it were deciding the case." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, n. 7 (9th Cir.2000) (quoting *Aetna Cas. & Sur. Co. v. Sheft*, 989 F.2d 1105, 1108 (9th Cir. 1993)). The Court "must use [its] best judgment to predict how [the Arizona Supreme Court] court would decide it." *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir.1997) (quoting *Allen v. City of Los Angeles*, 92 F.3d 842, 847 (9th Cir.1996)). To aid in this determination, the Court will look to case law from other jurisdictions for guidance. A review of the case law illustrates that courts differ on whether Comment i (or the common knowledge rule in general) bars as a matter of law all tobacco product liability claims.

### i. Courts Granting Motions to Dismiss Based on Comment i

In *Lane v. R.J Reynolds*, 853 So.2d 1144 (Miss.2003), the supreme court of Mississippi held that Mississippi product liability law, which is also based on the Restatement § 402A, bars recovery under a products liability theory based on smoking.

According to the *Lane* court, "the harm from tobacco use has been well documented, and elimination of the sources of the harm would greatly reduce the desirability of cigarettes." *Id.* at ¶ 20. The *Lane* court notes Comment i and highlights the fact that the dangers of "good tobacco" are in effect the very qualities that make it good. *Id.* The court declined to interpret Comment i as allowing product liability suits based on smoking where the plaintiff alleges manipulation of the contents of the tobacco in light of the Mississippi Legislature's stated purpose in enacting its products liability law. *Id.* at ¶¶ 24–25 (noting Legislature's purpose was to eliminate products liability claims for tobacco). Therefore, it granted a motion to dismiss, in their entirety, the product liability claims.[5]

Similarly, the Northern District of Ohio, applying Ohio law, frequently dismisses smokers' claims under Rule 12(b)(6) based on Comment i, and the common knowledge rule in general, even when the smokers allege alteration of the tobacco by addition of "foreign" substances. *See, e.g., Hollar v. Philip Morris, Inc.*, 43 F.Supp.2d 794, 807 (N.D.Ohio 1998); *Jones v. American Tobacco Co.*, 17 F.Supp.2d 706, 718 (N.D.Ohio 1998); *Paugh v. R.J. Reynolds Tobacco Co.*, 834 F.Supp. 228, 230–32 (N.D.Ohio 1993) (finding allegations of the addition of pesticides, and other various chemicals, to tobacco to be insufficient to remove plaintiff's claims from the blanket protection provided by the common knowledge rule and Comment i). *See also Little v. Brown & Williamson Tobacco Corp.*, 243 F.Supp.2d 480, 490 (D.S.C.2001) (list-

---

dictive properties of cigarettes via ammonia and other additives and/or via the engineering of higher nicotine tobaccos." (Complaint at ¶ 72).

**5.** Arizona appears to have no such legislative history relating to the enactment of Arizona's

products liability statute. Defendants cite to none in their briefing and also failed to provide any in response to a Hearing Question faxed to the parties prior to the July 16, 2003 Hearing.

ing additional cases that hold that Comment i and the common knowledge doctrine bar, as a matter of law, all smoking product liability claims).

### ii. Courts Denying Motions to Dismiss Based on Comment i

In *Thomas v. R.J. Reynolds Tobacco Co.*, 11 F.Supp.2d 850, 851 (S.D.Miss.1998), *overruled by Lane*, 853 So.2d 1144 (Miss. 2003) (overruling based on interpretation of intent of Mississippi Legislature when passing statute governing all products liability suits), the court, applying Mississippi law, rejected Defendants' argument that Comment i barred Plaintiff's claims because they were based on the idea that "cigarettes are generically defective." The court noted that plaintiff alleged that defendants deliberately added some compounds to cigarettes that did not naturally occur in tobacco, and that these compounds caused his illness. *Id.* at 852. Plaintiff "argu[ed] that these ingredients are not inherent characteristics of good tobacco, but rather are harmful ingredients added by the defendants," *Id.*, and the court refused to grant the motion to dismiss.

The court in *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1522 (D.Kan.1995), reasoned that Comment i

does not, as a matter of law, remove all claims of defective tobacco products from the operation of Section 402A. Although "good tobacco," without any additives or foreign substances, may not be unreasonably dangerous, that does not automatically mean that all tobacco-containing products are not unreasonably dangerous. The cigarettes sold by defendants are manufactured products and, as such, the court finds that they are subject to design, packaging, and manufacturing variations which may render them defective even if the tobac-

co used in the manufacture was initially unadulterated.

*Id.*

Similarly, in *Little*, 243 F.Supp.2d 480, the court also denied a motion to dismiss based on Comment i. The court noted that "because raw tobacco, unlike cigarettes, is not a manufactured product, 'it would have been inappropriate for the commentators to use the terms, 'mismanufactured tobacco' or 'defectively designed tobacco' in the context of [Comment i's] illustrations.'" *Id.* at 490 (quoting *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1053 (Ind.Ct.App.1990)). In a footnote, the court also remarks that § 2 of the Restatement (Third) of Torts (1998), which most closely parallels § 402A, excludes tobacco from its list of "commonly and widely distributed products" that may inherently pose great risk of harm. *Id.* at 491, n. 7. The Little court postulates this omission reflects the changing attitudes of courts on the status of tobacco as an "unreasonably dangerous" product. *Id.; See also Wright v. Brooke Group Limited*, 114 F.Supp.2d 797, 810 (N.D.Iowa 2000) (refusing to grant motion to dismiss based "solely" on the language in Comment i and citing numerous other courts with similar rulings); *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F.Supp.2d 263, 272–73 (D.R.I.2000) (same).

### iii. Comment i Fails to Bar as a Matter of Law Plaintiffs' Products Liability Claims

■ While some courts have found otherwise, see *supra* pp. 1104–05, this Court finds the Arizona Supreme Court would find that Comment i does not bar all smokers' products liability suits. *See, e.g., Wright*, 114 F.Supp.2d at 810.

First, the plain language of Comment i refers to "good tobacco," not good cigarettes. Courts finding that Comment i

bars all smokers' products liability suits neglect to address this distinction. *See, e.g., Lane,* 853 So.2d 1144; *Hollar,* 43 F.Supp.2d 794. Moreover, "even the majority of cases that have dismissed cigarette product liability claims have done so not based on Comment i, but after a thorough analysis of the *specific risks* claimed by the respective plaintiff to have caused his or her injury and whether those risks were 'common knowledge' during the relevant time period." *Wright,* 114 F.Supp.2d at 810 (citing numerous cases to illustrate this finding) (emphasis added). Therefore, the Court finds that manufactured cigarettes are not within the Restatement's definition of "good tobacco," and smokers' product liability suits are not barred as a matter of law.

■ Next, even if the Court was persuaded that the Restatement's definition of "good tobacco" includes manufactured cigarettes containing no additional harmful substances beyond those occurring naturally in tobacco, the Court finds this insufficient to bar Plaintiffs' claims. Plaintiffs allege that Defendants were involved in a campaign designed "to misrepresent their actual role in manipulating the addictive properties of cigarettes via ammonia and other additives and/or via the engineering of higher nicotine tobaccos." (Complaint at ¶ 72). Therefore, considering the Plaintiffs' pleadings in light most favorable to the Plaintiffs, this Court could conceivably imagine a situation in which the cigarettes smoked by Winona Hearn were manipulated by the addition of some dangerous additive, thus, removing them from the Restatement's definition of "good tobacco" and rendering them unreasonably dangerous, despite Comment i.

Additionally, the Court finds that those cases barring all smokers' products liabili-

ty claims are distinguishable. In *Lane,* 853 So.2d 1144 (Miss.2003), the court relied on the legislative intent of the Mississippi Legislature when it enacted a products liability statute after expressly noting the goals of the statute included "abat[ing] the large volume of tobacco litigation." *Id.* at ¶ 21. Similarly, the Northern District of Ohio cases interpreted an Ohio products liability statute as expressing a legislative intent to limit smokers' products liability suits. *See, e.g., Hollar,* 43 F.Supp.2d 794. While the Arizona legislature has enacted statutes addressing products liability, see A.R.S. §§ 12–681, et al., Defendants present no evidence that the Arizona legislature intended to limit the availability of this remedy for smokers.

Finally, the Court also questions whether it is a reasonable interpretation of Comment i to bar all smokers' products liability claims. The *Lane* and Northern District of Ohio opinions reason that since "good tobacco" is not, under the interpretation of the Restatement, unreasonably dangerous in its original form,[6] manufacturers of cigarettes should be immune from liability for adding any additional substances besides tobacco to their product that result in a real danger increases the risk beyond that attributable to tobacco in its natural state. *See, e.g., Lane,* 853 So.2d 1144, ¶¶ 24–26; *Paugh,* 834 F.Supp. at 232. However, according to the plain language of Comment i, such cigarettes would be considered unreasonably dangerous. *See* Restatement § 402A, Comment i ("but tobacco containing something like marijuana may be unreasonably dangerous").

### c. The "Common Knowledge" Doctrine

■ Having dealt with the issue of "good tobacco" as defined under Comment

---

6. The Court questions this finding itself given the additional knowledge gained of the risks associated with tobacco since 1965 and the modification of the Restatement (Third) of Torts discussed supra at 1105.

i, the Court proceeds to Defendants' alternative argument that, even if the plain language of Comment i does not persuade the Court that cigarettes are not unreasonably dangerous, the common knowledge doctrine completely defeats Plaintiffs' product liability claims.

According to Defendants, applying the laws of various states, both state and federal courts throughout the country, repeatedly dismiss claims brought by smokers because information regarding the risks of smoking, including addiction, has long been available to, and known by, the public. Therefore, Defendants argue that the Court should take judicial notice of this past awareness and grant dismissal of all of Plaintiffs' product liability claims.

The Federal Rules of Evidence ("FRE") allow for judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.Evid. 201; *Guilbeault v. R.J. Reynolds Tobacco Company*, 84 F.Supp.2d 263, 270 (D.R.I.2000). The Advisory Committee's Note for Rule 201 states that "[w]ith respect to judicial notice of adjudicative facts, the tradition has been one of caution in **requiring that the matter be beyond reasonable controversy**," and "[a] **high degree of indisputability** is an essential prerequisite." (emphasis added). "Because the effect of judicial notice is to deprive a party of an opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b)." *Wright*, 114 F.Supp.2d at 816 (citing Fed.R.Evid. 201(b)).

Whether the common knowledge doctrine defeats plaintiffs' products liability claims as a matter of law, is a novel question in Arizona. Therefore, this Court must "make a reasonable determination of the results the highest state court would reach if it were deciding the case." *Kona Enters., Inc.*, 229 F.3d at n. 7. Specifically, the Court must decide if Arizona Courts would take judicial notice that the risks of smoking were common knowledge between 1950, the time Winona Hearn began smoking, and 1969, the time the Federal Labeling Act was adopted.

"Other courts considering [the issue] have reached different results regarding when, if at all, assorted risks, namely general disease-related risks and risks of addiction, associated with smoking became common knowledge." *Wright*, 114 F.Supp.2d at 811 (providing detailed review of courts granting or denying both motions to dismiss and summary judgment motions after determining a date for when the hazards of smoking became common knowledge).

In *Hill v. R.J. Reynolds Tobacco Co.*, 44 F.Supp.2d 837, 844 (W.D.Ky.1999), the court reasoned that

the judicial notice inquiry would focus on the state of popular consciousness concerning cigarettes before 1969. The Court is simply unwilling to take judicial notice of something as intangible as public knowledge over three decades in the past. The exercise seems inherently speculative and an inappropriate topic for judicial notice.

*See also Wright*, 114 F.Supp.2d at 815–19 (declining to decide issue as it would "involve questions of fact" and serve as simply a "pretext for dispensing with a trial"); *Little*, 243 F.Supp.2d at 491–94 (describing challenge to applying judicial notice to deciding when the risks associated with smoking became common knowledge). The *Hill* court also footnoted that many courts have found the issue of common

knowledge a question of fact. *Hill*, 44 F.Supp.2d at 844, n. 7.

This Court will also decline at this time to exercise judicial notice which would require selection of an arbitrary date for when the risks (i.e. lung cancer) associated with smoking became common knowledge. "[T]he simple fact that courts disagree about [the appropriate date] further illustrates ... this fact is subject to considerable dispute, such that taking judicial notice of it would be improper." *Wright*, 114 F.Supp.2d at 817. As this is a Motion to Dismiss, the Court must assume that all the facts alleged in Plaintiffs' Complaint are true, and must construe those allegations in the light most favorable to Plaintiffs.

Plaintiffs allege in their Complaint that they did not, in the exercise of ordinary diligence, know of the likelihood of, or the severity of, the risks from Defendants' tobacco products, including the risk of addiction, when they began smoking (Complaint at ¶ 22). Among other things, Plaintiffs allege in their design defect claim based on negligence that Defendants failed to establish a reasonably safe dose of tobacco for foreseeable users (*Id.* at ¶ 49(f)); failed to design a product that when used as intended was reasonably safe for foreseeable users (*Id.* at ¶ 49(g)); failed to make such feasible improvements in design and composition of their tobacco products to materially decrease the foreseeable risk to users (*Id.* at ¶ 49(h)); and in designing "light" cigarettes in such a way that they generate lower tar and nicotine ratings on standard machine smoking tests than regular cigarettes while typically they do not actually deliver less tar or nicotine when smoked by most cigarette smokers (*Id.* at ¶ 47(h)); and that Defendants controlled and manipulated the amount of ammonia in cigarettes for the purpose and with the intent of creating and sustaining addiction (*Id.* at ¶ 47(j)). Moreover, in their design defect claims based on strict liability, the

Plaintiffs allege that Defendants' tobacco products were addictive, habit-forming, and once used caused physical and psychological dependence (*Id.* at ¶ 55(b)); the tobacco products failed to perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable by the consumer (*Id.* at ¶ 55(c)); and that the risk of danger from the design of defendants' tobacco product outweighed the benefits obtained with the use of the products (*Id.* at ¶ 55(d)).

All of these allegations are at war with the claim that consumers knew they were buying a dangerous product. Without factual development, the Court cannot conclude that dismissal based on the common knowledge doctrine is required.

## 2. Federal Labeling Act Preemption Argument

Defendants allege that Plaintiffs' (1) failure to warn; (2) implied warranty; and (3) fraudulent concealment claims are impliedly barred under the Federal Labeling Act. 15 U.S.C.A. § 1331, et seq. The Court will dismiss Plaintiffs' (1) failure to warn claims that require a showing that Defendants' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, and (2) fraudulent concealment claims based on post–1969 concealment in cigarette advertising or promotional materials. The Court will not address preemption of Plaintiffs' implied warranty claims, as those claims are barred under Arizona law. *See supra* at 1103 (noting that in Arizona implied warranty claims merge with strict liability claims); *infra* at 1117–18 (dismissing implied warranty claims because Plaintiffs failed to reasonably notify Defendants of alleged breach of warranties).

### a. Preemption Generally

Article VI of the Constitution provides that the laws of the United States "shall be the supreme Law of the Land; ... anything in the Constitution or Laws of any state to the contrary notwithstanding." Art. VI, cl. 2. Thus, it has been settled by the Supreme Court that where state law conflicts with federal law it is "without effect." *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Accordingly, in applying the preemption doctrine, "the purpose of Congress is the ultimate touchstone." *Malone v. White Motor Corp.,* 435 U.S. 497, 508, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). (quoting *Retail Clerks v. Schermerhorn,* 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). However, under the Supremacy Clause, "the historic police powers of the States [are] not to be superceded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

In general, there are three ways that Congressional acts can preempt state law causes of action. First, Congress may preempt state law expressly via the language of the statute. *Pacific Gas & Electric. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 201, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). Second, Congress may "occupy a field" to such an extent that it is deemed to have preempted state law from that field. *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)). Under such circumstances, federal law so thoroughly occupies a field "as to make

reasonable the inference that Congress left no room for the states to supplement it." *Id.* Third, state law may be implicitly preempted when it actually conflicts with the federal law. *Perez,* 402 U.S. at 649, 91 S.Ct. 1704. Such a conflict exists where "compliance with both federal and state regulations is an...impossibility" or where state law interferes with the accomplishment of the objectives Congress had in mind when drafting the law. *Id.* In each of the three forms of preemption, the key issue is whether Congress intended that federal regulation supercede state law.

### b. The Federal Labeling Act

The Federal Labeling Act ("Act") was first passed by Congress in 1965, and later amended in 1969.[7] The express language of the Act provides: "No statement relating to smoking and health, other than the statement required by section 1333 of this title, shall be *required* on any cigarette package." 15 U.S.C.A. § 1334(a) (emphasis added). Moreover, Congress expressly preempted state law causes of action based on "requirements or prohibitions ... [relating to] ... advertising and promotion of any cigarettes" which conform to the provisions of the Act. 15 U.S.C.A. § 1334(b). Defendants contend that Congress also impliedly preempted other causes of action, including Plaintiffs' failure to warn and fraudulent concealment claims.

In the case at hand, the Court's ultimate goal is to render a decision that upholds both the express language of the Act, and Congress' intent behind drafting the Act. Congress explicitly announced its purposes behind drafting the Act, to include: (1) to adequately inform the public of the dangers associated with smoking cigarettes, (2) to protect the national economy from

---

7. The parties here are both subject to the Federal Cigarette Labeling and Advertising Act of 1965 and its successor, the Public

Health Cigarette Smoking Act of 1969, together referred to as the Federal Labeling Act.

the burden imposed by diverse, nonuniform, and confusing cigarette labeling and advertising regulations. 15 U.S.C.A. § 1331(1)-(2). As the First Circuit noted, "in drafting the Act, Congress had two policies-health protection (through education) and trade protection-to implement, but only one purpose: to strike a fair, effective balance between these two competing interests. The result is an Act that 'represents a carefully drawn balance between the purposes of warning the public of the hazards of cigarette smoking and protecting the interest of the national economy.'"

*Palmer v. Liggett Group, Inc.*, 825 F.2d 620, 625 (1st Cir.1987) (quoting *Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 187 (1986)). Thus, if any of Plaintiffs' state-law claims excessively disturb the Congressionally declared scheme mentioned above, they will be impliedly preempted.

### c. The Preemptive Scope of the Federal Labeling Act.

In *Cipollone v. Liggett Group, Inc.*, the Supreme Court determined the boundaries of federal preemption of state law claims brought under the Federal Labeling Act. 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("Act"). According to the Supreme Court, the Act impliedly preempts certain state law damage actions relating to smoking and health which challenge the adequacy of warnings on cigarette packages or the propriety of a manufacturer's advertising or promotion of cigarettes. *Id.* at 511, 112 S.Ct. 2608. More specifically, the Court held that (1) the 1965 Act does not preempt state law damage actions in general; (2) the 1969 Act does preempt claims based on a failure to warn and on the neutralization of federally mandated warnings to the extent that such claims rely on omissions or inclusions in a manufacturer's advertising or promotions; and (3) the 1969 Act does not preempt claims based on express warranty, intentional

fraud and misrepresentation, or conspiracy. *Id.* at 530–31, 112 S.Ct. 2608.

The Court in *Cipollone* concluded that the pre-emptive scope of the 1965 Act and the 1969 Act is governed entirely by the express language contained in Section 5 of each Act. The court further found that because both the 1965 and 1969 Acts each contained a provision defining the scope of the preemptory effect of those Acts, those provisions must be construed narrowly so as not to preempt matters beyond their reach. *Id.* at 518, 112 S.Ct. 2608. The Court also concluded that Section 5 of the 1965 Act did not preempt state law damage actions, but superceded only positive enactments by state and federal law-making bodies mandating particular warnings on cigarette labels or in cigarette advertisements. *Id.* However, in analyzing the 1969 Act, the Court found that the broad language of amended Section 5(b) extended the section's preemptive reach beyond positive enactments to include some, but not all, common law damages actions. *Id.* The common law damages actions that are preempted include those that impose "requirements and prohibitions...imposed under state law ... with respect to the advertising or promotion ... of cigarettes." *Id.* at 524, 112 S.Ct. 2608.

### d. The Federal Labeling Act's Preemptive Effect Before 1969

A number of district courts have held that the Federal Labeling Act preempts only those state-law damages actions that arose after its final version was adopted in 1969. *See Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan.1995) (holding that portions of plaintiffs claims based on failure to warn which related to activities of manufacturers after effective date of Public Health Cigarette Smoking Act of 1969 were preempted by the Act); *Gianitsis v.*

*American Brands, Inc.,* 685 F.Supp. 853 (D.N.H.1988) (same); *Hill,* 44 F.Supp.2d 837 (same). Further, the Court found none and Defendants' cite to no authority for finding that Congress intended the Act to apply retroactively. Therefore, Plaintiffs' failure to warn and fraudulent concealment claims as they relate to the time period from 1950, the date Winona Hearn began smoking, to 1969, the date Congress passed the Act, will all survive Defendants' Motion to Dismiss.

### e. The Federal Labeling Act's Preemptive Effect When Enacted in 1969.

In the present action, Plaintiffs allege that Defendants had a duty after 1969 to:

(1) "warn [ ] of developing knowledge demonstrating that previous cigarette users are at great risk of harm [ ] and should seek medical monitoring;" (Complaint at ¶ 48(e)).

(2) "disclose [ ] the results of their own and other scientific research known to them which indicates that use of cigarettes caused users a great risk of harm;" *Id.* at ¶ 48(i).

(3) "test the effects of 'additives' used in cigarettes;" *Id.* at ¶ 48(*l*).

(4) "not [ ] allege healthful or harmless effects of smoking without a proper scientific study;" *Id.* at ¶ 48(m).

(5) "not make misleading statements or suppress facts which materially qualify advertising or public statements made to the cigarette consuming public [ ];" Id. at ¶ 48(n).

(6) "reveal all material facts known concerning cigarettes in relation to human health to the cigarette-consuming public and Plaintiff who cigarette manufacturer Defendants knew were not aware of said facts." Id. at ¶ 48(o).

Plaintiffs then allege that the Defendants breached these duties. (Complaint at ¶¶ 49(g), (j), (*l*) (alleging negligent breach of duties during advertising and promotional activities); *Id.* at ¶ 54 (alleging strict liability breach of duties); *Id.* at ¶¶ 58, 60 (alleging false representations in advertising); *Id.* at ¶¶ 72, 74, 76, 82 (alleging breach of duties by various acts of fraudulent concealment)).

### i. Plaintiffs' Failure to Warn Claim

In *Cipollone,* the Supreme Court determined that the Act preempted post–1969 failure to warn claims requiring a showing that "advertising or promotions should have included additional, or more clearly stated, warnings ...." *Cipollone,* 505 U.S. at 524, 112 S.Ct. 2608.

Plaintiffs attempt to dispute this well settled law by citing to a pre-*Cipollone* District of Massachusetts opinion, which the First Circuit actually subsequently reversed. *See Palmer v. Liggett Group, Inc.,* 633 F.Supp. 1171, *reversed by* 825 F.2d 620 (1987). As Plaintiffs should be well aware, reversed opinions carry no precedential value, and moreover, any citation to such authority merely for persuasive effect requires the disclosure to the Court of the negative treatment. *See* Ariz. R. Supreme Ct., R. 42, ER 3.3, incorporated by Local Rule 1.6(d).

Unpersuaded by Plaintiffs argument and authority, the Court finds *Cipollone* applicable. Plaintiffs' post–1969 failure to warn claims fail where they require a showing that Defendants should have included additional, or more clearly stated, warnings in promotional or advertising material. *Cipollone,* 505 U.S. at 524, 112 S.Ct. 2608.

### ii. Plaintiffs' Fraudulent Concealment Claim

The Supreme Court in *Cipollone* also addressed preemption of fraudulent concealment claims. *Cipollone,* 505 U.S. at

527–28, 112 S.Ct. 2608. Cipollone alleged two theories of fraudulent misrepresentation.

The first theory was that the cigarette manufacturers, through their advertising, neutralized the effect of federally mandated warning labels. 505 U.S. at 527–28, 112 S.Ct. 2608. The Supreme Court held the Act preempted fraudulent misrepresentation claims based on this theory because it was inextricably linked to the plaintiff's failure to warn theory. *Id.* at 528, 112 S.Ct. 2608.

The second theory alleged false representation and concealment of material facts. *Id.* at 528, 112 S.Ct. 2608. Here, the Supreme Court recognized a difference in the Act's preemptive scope depending on if the allegations were those of false representation or those of fraudulent concealment. *Id.* False representation claims, whether or not they allege misrepresentation in advertising and promotional materials, are not preempted because they are based on a general duty to not deceive. *Id.* However, fraudulent concealment claims are only preempted to the extent they do not relied on a duty to disclose such facts through channels of communication other than advertising or promotion. *Id. See, e.g., Hill,* 44 F.Supp.2d at 840 ("*Cipollone* bars fraudulent concealment to the extent such a claim alleges neutralization of warnings or non-disclosure of information in cigarette advertising or promotion.").

■■■ Defendants argue that Plaintiffs fail to allege any fraudulent concealment claims which arise from a duty to disclose outside advertising or promotional channels. However, the Court does not agree. Plaintiffs broadly allege that Defendants fraudulently concealed information during medical research and litiga-

tion. While Plaintiffs fail to state to any state or federal law imposing a duty on Defendants to disclose the allegedly concealed facts, reading the Complaint in a light most favorable to Plaintiffs, the Court can conceive of the existence of such law. Therefore, this Court concludes that the Plaintiffs' post–1969 fraudulent concealment claims are preempted only to the extent that they rely on Defendants' duty to issue additional warnings through advertising and promotion. Plaintiffs' post–1969 fraudulent concealment claims are not preempted to the extent that they rely on a state-law duty to disclose such facts through channels of communication other than advertising or promotion.[8] *Id.* at 528, 112 S.Ct. 2608.

### 3. Federal Rule of Civil Procedure 9 Argument

Next, Defendants allege that Plaintiffs' fraudulent concealment and false representation claims must be dismissed because Plaintiffs failed to (1) plead the required element of reasonable reliance; and (2) satisfy Rule 9(b)'s requirement for pleading fraud with particularity. *See* Fed. R. Civ.P.9(b). The Court is persuaded by Plaintiffs' second argument to dismiss Plaintiffs' false representation and remaining, non-preempted, fraudulent concealment claims.

### a. Plaintiffs Plead All Elements of their Fraudulent Concealment and False Representation Claims

Defendants argue that Plaintiffs cannot establish reasonable reliance, a required element of both their false representation and fraudulent concealment claims, because the dangers of smoking are common

---

**8.** The Court notes that while this part of Plaintiffs' fraudulent concealment claim is not preempted by the Act, Plaintiffs have never-

theless failed to plead fraud with the requisite particularity. *See infra* pp. 1112–14.

knowledge. *See Coleman v. Watts*, 87 F.Supp.2d 944, 952 (D.Ariz.1998) (listing elements of fraudulent concealment); Restatement (Second) of Torts § 402B (listing elements of false representation). Defendants, again, ask the Court to take judicial notice of when the dangers of smoking became common knowledge, a subject that this Court does not believe appropriate for judicial noticing. *See supra* 1106–08; Fed.R.Evid. 201. Therefore, the Court declines to dismiss either of Plaintiffs claims based on Defendants' first argument.

### b. Plaintiffs Fail to Plead their Fraudulent Concealment and False Representation Claims with Particularity

#### i. *Legal Standard for Pleading Fraud*

Under the Federal Rules of Civil Procedure, a plaintiff is only required to file a "plain and short statement of the claim showing that [they are] entitled to relief." Fed.R.Civ.P.8. However, for claims involving fraud or mistake, Federal Rule of Civil Procedure ("FRCP") 9(b) imposes on the plaintiff additional pleading requirements. Under FRCP 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

The reasoning behind Rule 9 is "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly–Magee v. State of California*, 236 F.3d 1014, 1018 (9th Cir.2001).

To meet the particularity requirement, a plaintiff must set forth more than mere neutral facts necessary to iden-

tifying the transaction. *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir.1999). The plaintiff must set forth what is false or misleading about a statement, and why it is false. *Id.* Broad claims without factual support fail to adequately give defendants notice of the particular misconduct alleged to constitute fraud and, consequently, fail to satisfy FRCP 9(b). *United States v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051–52 (9th Cir.2001) (granting summary judgment because plaintiff failed to "identify the SmithKline employees who performed the test, or provide any dates, times, or places the tests were conducted" that plaintiff alleged were fraudulent). Similarly, conclusory allegations fail to satisfy FRCP 9(b). *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1134 (9th Cir.2002) (holding allegations that statements by defendant were "materially inaccurate and misleading" and "contained untrue statements of material facts" were "textbook examples of conclusory allegations that fail to satisfy the particularity requirements of Rule 9(b)"). Moreover, *In re GlenFed, Inc. Sec. Litig.*, decided by the Ninth Circuit, noted that the "plaintiff must include statements regarding the time, place, and nature of the alleged fraudulent activities, and that mere conclusory allegations of fraud are insufficient." 42 F.3d 1541, 1548 (1994) (superceded by statute on other grounds).

#### ii. *Plaintiffs Fail to Plead Fraudulent Concealment Claim with Particularity*

The Ninth Circuit requires that fraudulent concealment claims be pled with particularity. *389 Orange Street Partners v. Arnold*, 179 F.3d 656, 663 (9th Cir.1999) (holding that plaintiff was "required to plead, with particularity, each Connecticut-law element of fraudulent concealment"); *Conerly v. Westinghouse Electric Corp. et al.*, 623 F.2d 117, 120 (9th Cir.1980) (hold-

ing that "plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment").

■ Defendants argue that none of Plaintiffs fraudulent concealment allegations satisfy Rule 9(b). The Court agrees. Plaintiffs allege several fraudulent concealments with particularity, stating with specificity the time, place, manner, and contents of the alleged omissions. (*See* Complaint at ¶¶ 74(e); 75, 76(a)-(c), 78(e), 81).[9] However, Plaintiffs are also required to allege with particularity Winona's reliance on the truth of these statements (which allegedly represent fraudulent omissions). *See Ness v. Western Security Life Ins. Co.,* 174 Ariz. 497, 502, 851 P.2d 122, 127 (App.1993) (finding plaintiff failed to satisfy Rule 9(b) because he never stated with particularity how relied on representations or why his reliance was reasonable); *Hisel v. Upchurch,* 797 F.Supp. 1509, 1523 (D.Ariz.1992) (stating reliance element of fraudulent concealment claim). Plaintiffs only broadly allege reliance by Winona. (Complaint at ¶ 82). Plaintiffs must allege with particularity how Winona knew of the various particular statements noted in the Complaint and how she reasonably relied on them.

### iii. Plaintiffs Fail to Plead False Representation Claim with Particularity

Plaintiffs bring a false representation claim [10] under section 402(B) of the Restatement (Second) of Tort, which is an action in strict liability:

> one engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a *misrepresentation* of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, *even though, (a) it is not made fraudulently or negligently,* and (b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

Unlike a fraudulent concealment claim, a false representation claim does not require that the party making the misrepresentation to actually intend to misrepresent the qualities of the product (see *Comment a* of § 402(b) stating, "the rule stated in this section in one of strict liability for physical harm to the consumer, resulting from a misrepresentation of the character or quality of the chattel sold, even though the misrepresentation is an innocent one.").

9. The Court notes that Plaintiffs also make numerous allegations that do not satisfy Rule 9(b), *see, e.g.,* Complaint at ¶ 73, as well as numerous allegations that appear completely unconnected to Defendants, *see, e.g., id.* at ¶¶ 74(a)-(d), 76(d)-(e), 78(a)-(d). Claims based on these allegations cannot survive the Motion to Dismiss.

10. The Court notes that "the distinction between fraudulent, affirmative misrepresentation and fraudulent concealment is often a distinction without a difference." *Formento v. Encanto Business Park,* 154 Ariz. 495, 501, 744 P.2d 22, 28 (1987) (citing *State v. Coddington,* 135 Ariz. 480, 481, 662 P.2d 155, 156 (App.1983) ("Where failure to disclose a material fact is calculated to induce a false belief, the distinction between concealment and affirmative misrepresentation is tenuous.")). The Restatement (Second) of Torts § 529 (1977) addresses this situation, stating that "a representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a *fraudulent* misrepresentation." (emphasis added). Therefore, if Plaintiffs' Complaint alleged fraudulent misrepresentation, the same analysis as that done for Plaintiff's fraudulent concealment claims would apply. However, Plaintiffs do not allege fraudulent misrepresentation as a cause of action, instead they specifically cite to Restatement § 402(B) and refer to a "false representation" strict liability claim.

Yet, there must still be some mistaken representation.

Rule 9 requires pleading with particularity on "all averments of fraud or mistake . . . ." Fed. R. Civ.P.9. Therefore, Plaintiffs' false representation claims, even if premised solely on an honest or negligent mistaken representation, must satisfy Rule 9, and, as with their fraudulent concealment claims, Plaintiffs fail to plead Winona's reliance with particularity. (See Complaint at ¶¶ 58, 59).

### 4. Defendants' Other Arguments

Having addressed Defendants' two main arguments for dismissal, the Court now turns to several arguments for dismissing Plaintiffs' various other causes of action.

#### a. Plaintiffs' Manufacturing Defect Claim Fails

■ Plaintiffs alleged a negligent manufacturing defect claim. (Complaint at ¶ 49(g)). In *Brady v. Melody Homes Manufacturer,* the Arizona Court of Appeals stated that "the proof as to the existence of the defect in manufacturing defect cases is relatively straightforward, usually by comparison of the injury-producing product *with other non-defective products in the same line.*" 121 Ariz. 253, 255, 589 P.2d 896, 898 (1979), *overruled on other grounds by Dart v. Wiebe Manufacturing Inc.,* 147 Ariz. 242, 709 P.2d 876 (1985) (emphasis added).

Plaintiffs fail to allege in their Complaint that Winona suffered harm from cigarettes that were not in the condition intended by the Defendants (i.e. that Winona's cigarettes differed from other cigarettes coming off the same manufacturing line). Instead, Plaintiffs, apparently misunderstanding a manufacturing defect

claim to require showing a product differed from other similar products in the marketplace, allege that "it is possible that some of the packages or cigarettes themselves contain more nicotine and/or carcinogens then the majority of the same brand of cigarettes decedent smoked." (Response at 18). Even if Plaintiffs' allegation is true, this fails to state a claim for negligent manufacturing. Therefore, the Court will dismiss Plaintiffs' negligent manufacturing defect claim.

#### b. Plaintiffs' Implied Warranty Claims Fail for Failure to Warn of Defect

Under Arizona law, where a tender of a product has been accepted, "the buyer must within *reasonable time* after he discovers or should have discovered any breach [of warranty] notify the seller of [the] breach or be barred from any remedy." A.R.S. § 47–2607(C)(1) (emphasis added).

■ In the present case, the Defendants' breach of implied warranty claim became, or should have become, apparent to Plaintiffs once Winona was diagnosed with cancer in April of 2000 (Complaint at ¶ 23). At that point, Plaintiffs either knew or should have known that the cigarettes were the most likely cause of the lung cancer, especially considering the number of years Winona had been smoking and the written warnings on the cigarette packages. However, Plaintiffs' first notification of Defendants occurred when Plaintiffs' filed this lawsuit in 2002, almost 2 years later.[11]

■ Plaintiffs argue that the issue of reasonable notice is one that should be left

---

**11.** Plaintiffs' Response makes reference to several conversations with Defendants' counsel prior to filing the lawsuit which they allege satisfy the notice requirement. (Response at 17–18). However, Plaintiffs neglect to indicate the date that these conversations occurred.

to a jury (Response at 17). However, "reasonableness is a matter to be resolved by the jury *unless it appears that only one finding can legally be derived from the circumstances."* *Pace v. Sagebrush Sales Company,* 114 Ariz. 271, 274, 560 P.2d 789, 792 (1977) (citing *Davidson v. Wee,* 93 Ariz. 191, 200, 379 P.2d 744, 749 (1963) (emphasis added)). The *Pace* court, in a case involving breach of a lumber contract between manufacturer and retailer, determined that notice exceeding *four months* was unreasonably late, barring retailers' warranty claims on summary judgment. *Pace,* 114 Ariz. at 274, 560 P.2d 789.

The Court finds that while filing a complaint upon an opposing party (as is the case here) may constitute reasonably timely notice, *Davidson,* 93 Ariz. at 199, 379 P.2d at 749 (holding that "notice of the claim of breach need take no special form" and "where no particular mode of notice is required by the statute what constitutes giving of notice is liberally construed."), two years constitutes unreasonably delayed notice. *See Pace,* 114 Ariz. at 274, 560 P.2d 789. Therefore, the Court will dismiss Plaintiffs' implied warranty claims.

### c. Plaintiffs' Negligent Infliction of Emotional Distress Claim Fails

■ It is well established in Arizona that in order to recover for negligent infliction of emotional distress, a plaintiff must show that (1) "the shock or mental anguish of the plaintiff must be manifested as a physical injury"; (2) "the emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship, either by consanguinity or otherwise"; and (3) "the plaintiff/bystander must himself have been in the zone of danger so that the negligent

defendant created an unreasonable risk of bodily harm to him." *Villareal v. State Dept. of Transp.,* 160 Ariz. 474, 774 P.2d 213 (1989); *Keck v. C. Jackson,* 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979).

■ Plaintiffs satisfy the first element because their immediate familial relationships (i.e. husband/wife, mother/daughter) epitomize what the *Keck* court intended as a "close personal relationship." *Keck,* 122 Ariz. at 116, 593 P.2d 668 (citing W. Prosser, the Law of Torts, section 54 at 334–35 (4th ed.1971)). Plaintiffs also satisfy the second element, having alleged that they observed Winona's injuries. (Complaint at ¶ 70). However, they fail to satisfy the final element, having neither plead any physically injured as a result of their alleged mental anguish nor that they were in the "zone of danger." [12] Therefore, the Court will grant Defendants' Motion to Dismiss relating to Plaintiffs' negligent infliction of emotional distress claim.

### d. Plaintiffs' Survival Claim

Arizona's survival statute, A.R.S. § 14–477, provides: "Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person..." The survival statute does not create a claim but merely prevents abatement of decedent's claim for injury and provides for its enforcement by his personal representative. A.R.S. § 14–477; *Barragan v. Superior Court of Pima County,* 12 Ariz. App. 402, 470 P.2d 722, 724 (1970). Because the Court will not dismiss all of

---

**12.** While Plaintiffs do allege that they witnessed the decedent smoking (*id.*), they never mention that such observation either led to fear for their own injuries or the manifestation of any physical injuries.

Winona's claims, the Defendants' Motion to Dismiss relating to Plaintiffs' survival claim will be denied.

### e. Plaintiffs' Wrongful Death Claims

Under Arizona's wrongful death statute, A.R.S. § 12–611, a plaintiff may only bring a wrongful death claim where the decedent herself would have been allowed to maintain an action for damages in the instance that "death had not ensued." Because some of Plaintiffs' state claims will survive Defendants' Motion to Dismiss, the Court will deny Defendants' Motion to Dismiss relating to Plaintiffs' Wrongful Death claim.

### f. Plaintiffs' Civil Conspiracy Claim

██ Despite Defendants' argument that an action for civil conspiracy is not actionable in Arizona, the Supreme Court in Arizona has held to the contrary. *Wells Fargo Bank v. Arizona Laborers*, 201 Ariz. 474, 38 P.3d 12 (Ariz.2002). The *Arizona Laborers* court determined that "[f]or a civil conspiracy to occur, two or more people must agree to accomplish an unlawful purpose or to accomplish a lawful object by unlawful means, causing damages." 201 Ariz. at 498, 38 P.3d at 36. Defendants rely on, *Tovrea Land and Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 131, 412 P.2d 47, 63 (1966), an Arizona Supreme Court case, stating that, "[t]here is no such thing as a civil action for conspiracy. The action is one for damages arising out of the acts committed pursuant to the conspiracy," (citing *Hale v. Brown*, 84 Ariz. 61, 323 P.2d 955 (1958)). The thrust of *Tovrea* is that a mere agreement to do a wrong imposes no liability. However, an agreement plus a wrongful act may result in liability. *McElhanon v. Hing*, 151 Ariz. 386, 392, 728 P.2d 256, 262 (App.1985). The Plaintiffs plead that Defendants engaged in numerous agreements with other parties to do wrongful acts, and that they in fact carried out those wrongful acts (Complaint at ¶ 85(describing conspiracy) and ¶ 87(alleging the conspiracy was carried out)). Therefore, Plaintiffs plead all necessary elements of a civil conspiracy in Arizona and, the Court will deny Defendants' Motion to Dismiss as it relates to Plaintiffs' civil conspiracy claim.

### g. Plaintiffs' Punitive Damages Claim

██ Punitive damages are appropriate only where actual damages have been determined to exist. *see Edmond v. Fairfield Sunrise Village, Inc.*, 132 Ariz. 142, 644 P.2d 296, 298 (App.1982) ("A lawsuit for punitive damages only may not proceed once the cause of action for actual damages has been extinguished.") Moreover, in Arizona, punitive damages do not compensate the plaintiff for any loss. *Huggins v. Deinhard*, 127 Ariz. 358, 621 P.2d 45 (App.1980). They are derivative damages and may only be awarded if the plaintiff has recovered actual damages. *See Gomez v. Dykes*, 89 Ariz. 171, 359 P.2d 760 (1961). Punitive damages are "only to be awarded in the most egregious of cases, where there is reprehensible conduct combined with an evil mind over and above that required for commission of a tort." *Linthicum v. Nationwide Life Ins., Co.*, 150 Ariz. 326, 331, 723 P.2d 675, 680 (1986). Since this Court has not dismissed all Plaintiffs' claims, the issue of whether or not the Defendant acted with an evil mind remains to be resolved, and the Defendants' Motion to Dismiss relating to Plaintiffs' punitive damages claim will be denied.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. # 11)

is **DENIED** in part and **GRANTED** in part.